UNITED STATES of America, Plaintiff,

v.

PARCEL I, BEGINNING AT A STAKE, ETC., Defendant.

Civ. No. 89–4211.

United States District Court,
S.D. Illinois,
Benton Division.

Feb. 7, 1990.

Guice G. Strong, Asst. U.S. Atty., Benton, Ill., for plaintiff.

Thomas Aaron Luther, Selmer, Tenn., pro se.

Charles O. Grigson, Austin, Tex., Ronald J. Giacone, Benton, Ill., Joseph H. Guffey, Husch Eppenberger Donohue Cornfeld & Jenkins, St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on the claimants' Motion to Dismiss or Alternatively to Transfer and their Motion to Quash Warrant of Arrest or Alternatively Return of Seized Property. As a preliminary matter, this Court GRANTS claimant's Motion to Consolidate in *United States v. Selmar, Tenn. Property*, 89–4222 (Document No. 14).

### I. FACTS

The claimants in these consolidated cases are Norma D. Surratt, Bobby Surratt, Ronald J. Surratt and Norman H. Louisan. All are related, directly or as an in-law, to Harley G. Surratt. Harley Surratt is a convicted drug conspirator, who was involved in what is commonly termed the Lanier drug conspiracy. Surratt contributed to the extravagant success of that conspiracy by providing semi-tractors, trailers, and drivers to transport tons of marijuana across the United States. Surratt also occasionally drove the trucks himself to transport both marijuana and drug money. He also drove drug kingpin, Randy Lanier, to Pennsylvania at a time when Lanier was a federal fugitive attempting to evade prosecution. Harley Surratt was handsomely compensated for his crimes.

The government contends that Surratt attempted to "launder" his drug money by purchasing real estate, businesses and chattels in his relatives' names. Specifically, the government contends that Surratt financed the purchases of the following: (1) a 64.54–acre farm, including a farmhouse and various improvements and equipment, which is in the name of claimant Bobby Surratt, (2) a one-acre tract of land, upon which Harley and claimant Norma Surratt built a house, (3) a 1986 Fleetwood mobile home which is now in the name of claimant Norman Louisan, (4) the business, accounts and chattels of Surratt Trucking Company, which are now in the names of Ronald and Norma Surratt, (5) various semi-tractors and trailers, and (6) the real estate and business comprising the Selmar, Tennessee, NAPA Auto Parts store, which is in the name of Bobby Surratt. The government further contends that the auto parts store was used to facilitate drug activity in that Harley Surratt used it to further launder his drug money.

The claimants maintain, however, that the property which the government is seeking to forfeit is their own property, untainted by Harley Surratt's ill-gotten gains, and that the government acted illegally in seizing it. Specifically, in their Motion to Quash, the claimants allege that they were given no pre-seizure hearing to contest the government's contention that the property, ostensibly in their names, was actually the property of Harley Surratt. They also argue that all of the property and claimants in these actions are located in Tennessee, and thus a Court sitting in the Southern District of Illinois may not exercise jurisdiction over the property which is the subject of this dispute.

In their Motion to Dismiss or Alternatively to Transfer, the claimants once again argue that this court lacks *in rem* jurisdiction. They further contend that: (1) this Court lacks *in personam* jurisdiction, (2) venue is improper in the Southern District of Illinois, (3) service of process with respect to claimants Norma Surratt, Norman Louisan and Bobby Surratt was improper, and (4) claimant Ronald Surratt was not served with process.

### II. ANALYSIS

#### A. Jurisdiction

■ Subject matter jurisdiction in federal civil forfeiture actions is vested in United States District Courts by two different statutes. The first, 28 U.S.C. § 1345, grants exclusive jurisdiction in the district

courts for all actions in which the United States is plaintiff. The second, 28 U.S.C. § 1355, provides that the district courts shall have original, exclusive jurisdiction of all actions or proceedings for forfeiture under any act of Congress. Here, the government is seeking forfeiture pursuant to 21 U.S.C. § 881(a)(6) and (a)(7). These subsections provide, in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property rights shall exist in them:

(6) all monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, [and] all proceeds traceable to such exchange[.]

(7) all real property ... and any ... improvements ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment[.]

Thus, this Court clearly has subject matter jurisdiction to hear forfeiture proceedings.

■■■ The claimants argue, however, that subject matter jurisdiction aside, this Court's territorial jurisdiction cannot extend to allow it to dispose of property located in Tennessee. The claimants are wrong. The territorial jurisdiction of a United States District Court in a forfeiture proceeding is limited only by the territorial borders of the nation and the applicable venue provisions. *United States v. 5708 Beacon Drive, Austin, Tex.,* 712 F.Supp. 525, 527 (S.D.Miss.1988); *United States v. Premises Known as Lots 50 & 51 Etc.,* 681 F.Supp. 309, 313 (E.D.N.C.1988); *United States v. One 1974 Cessna Model 310R Aircraft,* 432 F.Supp. 364, 366 (D.S.C.1977). Thus, in effect, the venue statute controls territorial jurisdiction in that it represents the only statutory limitation on the district court's power to hear the matter at issue. *5708 Beacon Drive,* 712 F.Supp. at 527; *One 1974 Cessna,* 432 F.Supp. at 366. Here, the applicable venue statute is 21 U.S.C. § 881(j) which provides that venue is proper "in the judicial district in which the

criminal prosecution is brought." The criminal prosecution underlying the instant forfeiture proceeding was brought in the Southern District of Illinois. Therefore, this Court has *in rem* jurisdiction over the property at issue.

■■■ Furthermore, the claimants' argument that this court cannot proceed because it lacks *in personam* jurisdiction over the claimants is totally without merit. This action is a proceeding *in rem. In personam* jurisdiction is not the basis for this Court's exercise of jurisdiction.

### 2. Venue

As noted previously, the venue statute which is applicable to this proceeding is 21 U.S.C. § 881(j). Section 881(j) provides that a forfeiture proceeding is proper in the judicial district in which the underlying criminal prosecution was brought. Here, the underlying criminal prosecution was brought in the Southern District of Illinois. Thus, the claimants' argument that venue is improper in this Court must fail.

### 3. Service of Process

■■■ The claimants also argue that service of process in this case was defective. They note that Rule E(3)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides that "process *in rem* and of maritime attachment and garnishment shall only be served within the district." Claimants argue that service of process is thus automatically invalid where the res is outside the district. The government admits that 21 U.S.C. § 881 does not explicitly provide for nationwide service of process. It argues, however, that § 881(j) displaces the supplemental admiralty rules and that nationwide service should be implied from the legislative history of § 881(j) and from the inherent purpose which § 881 is meant to serve. This Court finds the government's argument compelling. Since process is necessary to perfect statutory jurisdiction, the claimants' argument, if followed, would render § 881(j) a nullity. A statutory construction which would impute a useless act to Congress must be viewed as unsound and rejected. *South Corp. v.*

*United States*, 690 F.2d 1368, 1374 (Fed. Cir.1982). Accordingly, this Court finds that extraterritorial service of process is allowed, by implication, from the legislative history and purpose of § 881(j).[1] *See generally, United States v. Premises Known as Lots 50 & 51 Etc.*, 681 F.Supp. 309, 313 (E.D.N.C.1988).

■ Claimant Ronald Surratt also alleges that he was never served with process in this matter. The Court file, however, contains a validly executed Process Receipt and Return which indicates that a United States Marshal or Deputy Marshal served Ronald Surratt on September 16, 1989. While this Process and Receipt is not conclusive proof of service, it is *prima facie* evidence of valid service and the claimant must do more than just allege, in a conclusory fashion, that he was never served with process. *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808–809 (7th Cir.1969). Here, Ronald Surratt has offered no proof that he was not served with process, thus his claim that process was lacking must be rejected.

### 4. Notice and Hearing

The government relies on 21 U.S.C. § 881 as support for its argument that the claimants received all process that was due them in this particular forfeiture proceeding. The claimants argue that § 881 is unconstitutional because it allows the government to seize a person's property without notice or opportunity to be heard. The government did not, however, rely on § 881 in initiating the instant forfeiture proceeding. The process afforded the claimants exceeded that which is mandated by § 881 in that the government sought an *ex parte* review of the Warrants of Arrest before United States Magistrate Philip Frazier. Thus, the constitutionality of that procedure, rather than the one mandated by § 881, is the issue before the Court. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347–348, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ As a general rule, the Fifth Amendment Due Process Clause requires notice and an opportunity to be heard before the state can deprive a person of a property interest. *See Fuentes v. Shevin*, 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–95, 32 L.Ed.2d 556 (1972). Sometimes, however, extraordinary circumstances justify postponing notice and an opportunity for a hearing. *Id.* at 90, 92 S.Ct. at 1999. The Supreme Court has found such extraordinary circumstances to exist where three criteria have been met: (1) the seizure must be necessary to secure an important governmental or public interest, (2) there must be a special need for very prompt action, and (3) the person initiating the seizure must be a governmental official responsible for determining, under the standards of a narrowly drawn statute, that the seizure is necessary and justified in the particular instance. *Id.* at 91, 92 S.Ct. at 2000.

■ In the context of civil *in rem* forfeiture proceedings, the Supreme Court has further refined the second *Fuentes* requirement. To make the required showing that there be a need for very prompt action the government must show either that: (1) the pre-hearing seizure is required to prevent further unlawful activity related to the property, or (2) the pre-hearing seizure is required to prevent dissipation or concealment of the property. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974).

■ In light of the foregoing Constitutional principles, it is clear that the government's seizure of the Surratt Trucking Company, the semi-tractor trailers and the NAPA auto parts store did not deprive the claimants of due process. The seizure advanced the important governmental interest of preserving the res so that a court could adjudicate the claims relating to it.

---

1. It is clear from the legislative history of § 881 that Congress intended to expand the government's ability to combat far-flung drug conspiracies, such as the one in which Harley Surratt was a participant.

There was a need for prompt action in that the assets of the trucking company and the semi-tractor trailers are mobile and easily concealed. Furthermore, the auto parts store was the alleged locus of criminal activity in the form of money laundering, and the government could reasonably believe that seizure was necessary to prevent further illegal activity. Finally, the proceeding was initiated by an appropriate government official. Thus, the government could have seized those items of property without any pre-seizure hearing at all since all three *Fuentes* requirements are met. The fact that the government sought the additional safeguard of having the warrants of arrest reviewed by a United States Magistrate in an *ex parte* proceeding leads this court to conclude that the claimants were afforded more than adequate due process, with respect to the trucking company, semi-tractor trailers and auto parts store.

The seizures of Bobby Surratt's farmhouse and land, Norma Surratt's real estate and home, and Norman Louisan's mobile home, however, raise more serious Constitutional concerns. These items are not easily dissipated or concealed and the government has not argued that any were likely to be used in any future criminal activity. Furthermore, the Court assumes that the claimants maintained the property as their homes. The claimants' expectations of privacy and freedom from government intrusion in their homes merit special Constitutional protection. *See, e.g., United States v. Karo*, 468 U.S. 705, 714, 104 S.Ct. 3296, 3303, 82 L.Ed.2d 530 (1984). Had the government seized the claimants' homes without any semblance of due process, this Court would be inclined to summarily quash the warrants of arrest issued for those parcels. As noted previously, however, the claimants were afforded at least a modicum of process prior to seizure in that a United States Magistrate reviewed the complaint for forfeiture and the affidavit of Special Agent Larry Davis in an *ex parte* proceeding before issuing the arrest warrants. The narrow question thus becomes whether an *ex parte* probable cause determination by a disinterested judicial officer provides adequate due process to per-

sons whose homes are seized by the government as part of a civil forfeiture proceeding.

 A court cannot be guided by technical, mechanical rules of law in its determination of whether the process afforded to claimants in a particular case was adequate. *Cafeteria and Restaurant Workers Union, Local 474, Et Al. v. McElroy, Et Al.*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Due process is a flexible concept and calls for such procedural protections as the particular situation demands. *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Accordingly, resolution of the issue of whether the magistrate's *ex parte* determination of probable cause afforded the claimants' adequate due process requires analysis of the governmental and private interests affected. In conducting this analysis, courts consider three factors: (1) the private interest that will be affected by the government action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional safeguards, and (3) the government's interest in avoiding more onerous procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). In evaluating the governmental interest at stake, courts can consider the fiscal and judicial burdens that additional procedural safeguards would entail, along with the *Fuentes* and *Calero–Toledo* factors. *See, e.g., United States v. The Premises and Real Property at 4492 South Livonia Road, Livonia, New York*, 889 F.2d 1258 (2d Cir.1989).

 In light of these factors, as applied to these specific circumstances, this Court finds that the claimants should have been afforded an adversarial hearing before their homes were seized. The claimants' private interests affected by the government action was great in light of their unique interests in their homes. *See United States v. The Premises and Real Property at 4492 South Livonia Road, Livonia, New York*, 889 F.2d 1258 (2d Cir.1989). Furthermore, although the *ex parte* pro-

ceeding before the magistrate obviously reduced the risk of an erroneous deprivation, an adversarial proceeding would have further reduced the risk. *Id.* Most importantly, the governmental interest in providing minimal due process is, in the balance, scant when compared with the claimants' overriding interest in their homes. The broad interest in deterring drug dealing will be established whether or not the seizure occurs before or after an adversarial proceeding. The government interest in foregoing burdensome proceedings will not be advanced since the claimants can, and did, invoke adversary procedures after seizure. *Id.* Furthermore, the claimants' homes cannot be readily dissipated or concealed and, in any event, the governmental interest can be adequately protected by the filing of a *lis pendens*.[2] *Id.* Also, the government has not demonstrated to the Court that it feared the claimants' homes would be used to further facilitate drug activity.[3] In light of these factors, the Court GRANTS the motion to quash with respect to the warrants issued for the arrest of Norma Surratt's, Norman Louisan's and Bobby Surratt's homes.

■ This ruling does not, however, require that the claimants' alternate motion for return of seized property be granted. Many courts have recognized that the illegal seizure of property, standing alone, will not immunize the property from forfeiture so long as impermissibly obtained evidence is not used in the forfeiture proceeding. *See, e.g., United States v. One Mercedes Benz, Four Door Sedan*, 711 F.2d 1297, 1303 (5th Cir.1983); *See also Dodge v. United States*, 272 U.S. 530, 532, 47 S.Ct. 191, 191, 71 L.Ed. 392 (1926). This Court has reviewed the complaints for forfeiture and the affidavit of Special Agent Larry Davis and finds that there is an independent basis for probable cause to issue warrants of arrest for the claimants' alleged property. The only argument that the claimants present in support of their claim that the government did not have probable cause to seize their alleged property is that such property is in the names of the claimants, not Harley Surratt. This argument is totally unavailing. One of the government's allegations, which is supported in detail by the Davis affidavit, is that Harley Surratt placed his property in his relatives' names to circumvent federal drug laws. The claimants have now been afforded an adversary hearing. The Court has reviewed the pleadings and finds that they do not begin to overcome the detailed factual allegations contained in the Davis affidavit. Accordingly, the Clerk of the Court is Ordered to Reissue the Warrants of Arrest for claimant Norma Surratt's, Norman Louisan's and Bobby Surratt's homes and connecting property. *See United States v. 124 East North Ave., Lake Forest, Ill.*, 651 F.Supp. 1350, 1356 (N.D.Ill. 1987).

In summary, the claimants' Motion to Consolidate (Document No. 14 Case No. 89–4222) is GRANTED. Their Motion to Dismiss or Alternatively to Transfer (Document No. 21 Case No. 89–4211) is DENIED. The claimants' Motion to Quash Warrants of Arrest or Alternatively for Return of Seized Property (Document No. 8 Case No. 89–4211; Document No. 13 Case No. 89–4222) is GRANTED IN PART AND DENIED IN PART. The Clerk of Court is ORDERED TO REISSUE THE WARRANT OF ARREST FOR THE PROPERTY DESCRIBED IN THE COMPLAINT FOR FORFEITURE IN REM, CASE 89–4211, COUNT I, II, AND V.

IT IS SO ORDERED.

---

**2.** The government filed a *lis pendens* in this particular case.

**3.** Indeed it would be almost impossible, and certainly ludicrous, for Norma Surratt to engage in any illegal activity in her home in view of the occupancy agreement she has with the government. *See United States v. The Premises and Real Property at 4492 South Livonia Road, Livonia, New York*, 889 F.2d 1258 (2d Cir.1989).