UNITED STATES of America,
Plaintiff–Appellee,

v.

51 PIECES OF REAL PROPERTY, ROS-
WELL, NEW MEXICO, including all
fixtures, appliances, and appurtenances
therein and all rents, profits, other in-
come and proceeds therefrom; All De-
posits, Rents, Proceeds and Records
Maintained by the Rent Shoppe for all
Properties Managed for James Grand-
george, Nitsua Management, Brookes,
Ltd., the Oversoul Foundation, and Don-
ald Austin, Defendants,

Nitsua Management, Claimant–Appellant.

No. 92–1346.

United States Court of Appeals,
Tenth Circuit.

Feb. 28, 1994.

James R. Allison, Interim United States Attorney, James S. Russell, Assistant U.S. Attorney, Denver, Colorado, for Plaintiff–Appellee.

Christopher C. Jeffers of Geil, Jeffers, Woodrum and Waitkus, P.C., Boulder, Colorado, for Claimant–Appellant.

Before, SETH, BARRETT, and McKAY, Circuit Judges.

McKAY, Senior Circuit Judge.

Appellant Nitsua Management appeals the district court's order of October 22, 1992, granting the government's motion for default judgment and final order of forfeiture of certain real property located in New Mexico, and denying Nitsua's various motions, including a motion to dismiss for lack of jurisdiction.[1]

The government sought to forfeit the New Mexico property pursuant to 18 U.S.C. §§ 981, 1341, 1343, and 1956 because it allegedly was purchased in furtherance of a money laundering scheme engaged in by Donald Austin, who was indicted with others by a federal grand jury in the District of Colorado in 1991. Nitsua, which is a business trust organization organized under the laws of Nevada, held legal title to the real property at issue. The government contended that Austin was the alter ego of Nitsua.

On July 10, 1991, the government filed its verified complaint for forfeiture in rem in the United States District Court for the District of Colorado, and the court issued a warrant for arrest of the property in rem, pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules).[2] The government subse-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. The Supplemental Rules, which are part of the Federal Rules of Civil Procedure, govern procedure in civil forfeiture actions. *United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1215 (10th Cir.1986). The Federal Rules of Civil Procedure also apply in civil forfeiture actions, to the extent they are not inconsistent with the

quently amended its complaint to add a party on July 31, and the court issued another warrant for arrest of the property in rem.

The government sent notice of the seizure and forfeiture proceedings to Nitsua at an address in La Jolla, California, and sent notice to Austin through his criminal defense attorney. The government also published notice in the *Rocky Mountain News* for three consecutive weeks, pursuant to Supplemental Rule C(4) and the district court's order.

By January 1992, no one had come forward to file a claim to the property, so the government moved for a default judgment.[3] Before the court ruled on the default motion, counsel entered an appearance on behalf of Nitsua on April 22 and moved for additional time in which to file a claim and answer. Shortly before the October hearing on the parties' respective motions, new counsel entered an appearance for Nitsua and moved to continue the hearing. Counsel subsequently filed an amended motion for additional time in which to file a claim and answer, a claim, and a motion to dismiss the complaint and return the property to Nitsua. In the latter motion, Nitsua asserted that the court lacked in rem jurisdiction over the property and personal jurisdiction over Nitsua and that the seizure was illegal because it occurred without any prior notice or opportunity for a hearing.

The district court denied the motion to continue the hearing and proceeded to hear the merits of the parties' respective motions. The court concluded that it had in rem jurisdiction over the property, as well as personal jurisdiction over Austin, whom the court found to be the alter ego of Nitsua. The court denied Nitsua's request for additional time in which to file a claim and answer and, after determining that probable cause existed to forfeit the property, entered judgment in favor of the government.

On appeal, Nitsua contends that the district court abused its discretion in two respects: first by refusing to continue the

hearing; and then by refusing to permit Nitsua to file a late claim and answer. Nitsua also argues that the seizure of the New Mexico property without prior notice and a hearing violated Nitsua's due process rights. Further, Nitsua contends that the notice the government ultimately sent Nitsua regarding the forfeiture proceedings was insufficient. Finally, Nitsua maintains that the district court had neither in rem jurisdiction over the property, nor personal jurisdiction over Nitsua. Nitsua seeks to have the forfeiture set aside, to have its property returned, including the rents collected after the seizure, and to have the government start new proceedings in a proper fashion.

■ We begin our analysis by considering the jurisdictional issues de novo. *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 173 (10th Cir.1992). Because a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action, we have held that before entering a default judgment, a court has "an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir.1986). This affirmative duty exists regardless of whether the parties are people or, in the case of actions in rem, inanimate objects such as pieces of real property.

## I. In Rem Jurisdiction.

■ The exercise of in rem jurisdiction in a civil forfeiture case permits the court to adjudicate the rights of the government to the property as against the whole world. *United States v. Certain Real & Personal Property Belonging to Hayes*, 943 F.2d 1292, 1295 (11th Cir.1991). Traditionally, a court could obtain in rem jurisdiction only over property situated within its territorial borders. *Pennington v. Fourth Nat'l Bank*, 243 U.S. 269, 272, 37 S.Ct. 282, 283, 61 L.Ed. 713 (1917). Thus, venue for an in rem civil proceeding to forfeit property lies in the district

Supplemental Rules. *Id.* at 1216; Fed.R.Civ.P. A.

**3.** A claimant seeking to make a claim to property subject to an in rem forfeiture action must file a

claim within ten days after service is executed and serve an answer within twenty days thereafter. Fed.R.Civ.P. C(6).

in which the property is found.[4] 28 U.S.C. § 1395(b).

In 1986, as part of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207, Congress expanded the venue for civil forfeiture actions arising out of money laundering activities as follows:

In addition to the venue provided for in section 1395 of title 28 or any other provision of law, in the case of property of a defendant charged with a violation that is the basis for forfeiture of the property under this section, a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought.

18 U.S.C. § 981(h).

■ The government relies on the provisions of § 981(h) to support its argument that the district court had jurisdiction over the defendant property located in New Mexico because the underlying criminal prosecution was brought in the District of Colorado and, after his arrest, Austin also was brought into the District of Colorado.[5] Venue, however, is distinct from jurisdiction. *United States v. Contents of Accounts Nos. 3034504504 & 144–07143*, 971 F.2d 974, 980 (3d Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). Even if a district is the proper venue for a civil forfeiture action, the court cannot proceed

unless it has jurisdiction over the defendant property. To obtain jurisdiction over the property, the court must be able to execute service of process on it. *Id.* at 980–81.

At the time the government filed its complaint and the district court sought to obtain jurisdiction over the property in New Mexico, Supplemental Rule E(3)(a) provided that "[p]rocess in rem and of maritime attachment and garnishment shall be served only within the district." By contrast, Fed. R.Civ.P. 4(f) provided that "[a]ll process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of the state."[6] Even if the more expansive service provisions of Rule 4(f) applied, the district court could not execute service of process outside Colorado unless some federal statute authorized the court to do so.

■ The government contends that § 981(h) is such a statute. In support of its position, the government relies on several district court cases holding that either § 981(h) or 21 U.S.C. § 881(j)—the counterpart to § 981(h) in drug cases—authorizes nationwide service of process. *United States v. 953 E. Sahara*, 807 F.Supp. 581, 581 (D.Ariz.1992) (§ 981(h));[7] *United States v. Parcel I, Beginning at a Stake*, 731 F.Supp. 1348, 1351 (S.D.Ill.1990) (§ 881(j)); *United*

4. Venue for an in personam civil proceeding for recovery of a fine, penalty or forfeiture is in the district in which the claim accrues or in which the defendant is found. 28 U.S.C. § 1395(a); 1A, Pt. 2 James W. Moore, et al., *Moore's Federal Practice* ¶ 0.344[3], at 4223 (2d ed. 1993). Venue for a civil proceeding to forfeit property seized outside the territorial borders of the United States is in the district into which the property is brought. 28 U.S.C. § 1395(c); *United States v. One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. 364, 368 (D.S.C.1977).

5. Nitsua argues that § 981(h) does not apply because the property at issue is not "property of the defendant." Other courts have accepted venue as proper under § 981(h) when the government's complaint has alleged that the subject property, though titled in someone else's name, actually is property of the criminal defendant. *See, e.g., United States v. 953 E. Sahara*, 807 F.Supp. 581, 582 n. 3, 585 (D.Ariz.1992); *United*

States v. Contents of Account No. 11671–8, 763 F.Supp. 53, 54 (S.D.N.Y.1991). Here, the government alleged that the real property titled in Nitsua's name actually was property of Austin, one of the criminal defendants. Nitsua does not dispute the district court's factual finding that Austin is its alter ego.

6. Because the government commenced this action in 1991, it is governed by the provisions of Rule 4 that were in effect in 1991, rather than the amendments to Rule 4 that went into effect on December 1, 1993.

7. The government mistakenly cites *953 E. Sahara* as a case from the District of Nevada and, on that false premise, argues that it undercuts the ruling in *United States v. 11205 McPherson Lane*, 754 F.Supp. 1483, 1487 (D.Nev.1991), that § 881(j) does not authorize nationwide service of process.

*States v. 2050 Brickell Ave.*, 681 F.Supp. 309, 314 (E.D.N.C.1988) (§ 881(j)).

In each of these cases, the district court acknowledged that Congress did not expressly provide for nationwide service of process in either § 981(h) or § 881(j), but determined that authority for nationwide service should be implied to give effect to the expanded venue provision. *953 E. Sahara*, 807 F.Supp. at 585; *Parcel I*, 731 F.Supp. at 1351–52; *2050 Brickell Ave.*, 681 F.Supp. at 313–14.

At least two other courts, however, have declined to imply authority for nationwide service of process in these expanded venue provisions. *Accounts Nos. 3034504504 & 144–07143*, 971 F.2d at 982–83 (§ 981(h)); *United States v. 11205 McPherson Lane*, 754 F.Supp. 1483, 1487 (D.Nev.1991) (§ 881(j)). The following factors informed these courts' respective decisions: (1) the statute, itself, is silent; (2) the relevant legislative history, if any, does not support the implication of nationwide service of process;[8] (3) Congress has provided expressly for nationwide service of process in a wide variety of statutes when it has deemed such process necessary; and (4) in *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987), the Supreme Court held that because Congress knows how to provide for nationwide service of process, its failure to do so "argues forcefully that such authorization was not its intent." *Accounts Nos. 3034504504 & 144–07143*, 971 F.2d at 981–82; *11205 McPherson Lane*, 754 F.Supp. at 1486–88.

The Third Circuit also concluded that, even in the absence of nationwide service of process, § 981(h) is not without effect. Its "grant of venue to a district court in which a related criminal proceeding has been brought permits [that court] to adjudicate any rights the criminal defendants subject to its jurisdiction may have in a *res* located [outside the district], without regard to [in rem] service of process." *Accounts Nos. 3034504504 & 144–07143*, 971 F.2d at 983. If, however, the property is outside the district in which the related criminal proceeding is pending and the government wishes to adjudicate rights in the property of anyone who is not subject to the territorial jurisdiction of the district court, then, the Third Circuit ruled, the government must bring a civil forfeiture action in the district in which the property is located. *Id.*

■ We are persuaded by the rationale of the Third Circuit and, therefore, hold that § 981(h) does not authorize nationwide service of process. Our inquiry does not end here, however, because we also must determine whether the amendment of 28 U.S.C. § 1355 in 1992 retroactively gave the district court jurisdiction. If it did not, then we must determine whether the district court had personal jurisdiction over Nitsua so that it could, nonetheless, adjudicate Nitsua's rights to the subject property.

On October 28, 1992, Congress enacted the Annunzio–Wylie Anti–Money Laundering Act as part of the Housing and Community Development Act of 1992, Pub.L. No. 102–550, 106 Stat. 3672. Section 1521 of the Act amended 28 U.S.C. § 1355 to provide in pertinent part as follows:

> (b)(1) A forfeiture action or proceeding may be brought in—
>
> > (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or
> >
> > (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.
>
> . . . .
>
> (d) Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be re-

---

**8.** In *Accounts Nos. 3034504504 & 144–07143*, 971 F.2d at 981, "[t]he government concede[d] that section 981(h) has no legislative history." We note that in the legislative history of the Money Laundering Act of 1991, S. 1665, 102d Cong., 1st Sess. (1991), which was introduced on behalf of the Department of Justice, the section-by-section analysis states that while 28 U.S.C. § 1355 gives district courts subject matter jurisdiction over civil forfeiture actions and 28 U.S.C. § 1395 and 18 U.S.C. § 981(h) provide for venue in such cases, "no statute defines when a court has jurisdiction over the property that is the subject of the suit." 137 Cong.Rec. S12,238 (daily ed. Aug. 2, 1991).

·quired to bring before the court the property that is the subject of the forfeiture action.

Section 1521 became effective on the date of enactment. *See* Pub.L. No. 102–550, § 2, 106 Stat. 3681 (set out as a note under 42 U.S.C. § 5301) ("The provisions of this Act and the amendments made by this Act shall take effect and shall apply upon the date of the enactment of this Act, unless such provisions or amendments specifically provide for effectiveness or applicability upon another date certain."). The government argues that this amendment to § 1355 retroactively gave the district court in rem jurisdiction over the property in New Mexico. We disagree.

"Regardless of whether Congress enacts a new law or amends an existing one, ... [w]e must examine whether Congress clearly and expressly intended the new law to apply retroactively, as shown by statutory language or authoritative legislative history." *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1388 (10th Cir.1990), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). The language of the Housing and Community Development Act's general effectiveness provision, set forth above, does not indicate whether the Act is to apply to cases pending on the date of enactment, or only to cases filed thereafter. Although particular provisions of the Act have different effectiveness or applicability dates, the legislative history does not evidence any congressional intent to apply the Act retroactively as a whole. "The standard of 'clear congressional intent' for the retroactive application of statutes requires articulated and clear statements on retroactivity, not inferences drawn from the general purpose of the legislation." *Id.* at 1387.

In the absence of clear congressional intent expressed in the statutory language or the legislative history, we follow the presumption set forth in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *DeVargas*, 911 F.2d at 1389,

1392; *accord Oklahoma Radio Assocs. v. FDIC*, 987 F.2d 685, 695–96 (10th Cir.1993).

Therefore, we conclude that the amendment of § 1355 in October 1992 does not apply to the case before us. *But cf. Republic Nat'l Bank v. United States*, —— U.S. ——, ———–——, 113 S.Ct. 554, 565–66, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring) (arguing that addition of subsection (c) to § 1355 should be applied retroactively); *United States v. One 1990 Lincoln Town Car*, 817 F.Supp. 1575, 1577–78 (N.D.Ga. 1993) (retroactively applying 1992 amendments to § 1355 without discussing whether Congress so intended). Moreover, even if the provisions were otherwise retroactive, we doubt they could retroactively validate service of process that was invalid when executed.

Because the district court did not execute valid service of process on the property in New Mexico, it did not have in rem jurisdiction over that property. Therefore, the court erred in entering a judgment of forfeiture for the government, thereby adjudicating the government's interest in the property as against the whole world. *See Accounts Nos. 3034504504 & 144–07143*, 971 F.2d at 984.

## II. In Personam Jurisdiction.

If, however, the district court had personal jurisdiction over Nitsua, then the court could adjudicate the rights of the government in the property as against Nitsua. *See id.* at 984. Nitsua contends that the district court had no personal jurisdiction over it. The government adopts the position of the district court, which ruled that it had personal jurisdiction over Nitsua through its alter ego, Donald Austin. *See* Appellee's Br. at 3.

■ The government has the burden of establishing that the district court had jurisdiction over Nitsua. *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir.1993). Even if we were to assume that an entity and its alter ego can be treated as one person for purposes of personal service, an issue we need not decide here, we conclude the government failed to establish that it had personally served, or

that the court otherwise had personal jurisdiction over, Austin.

The only facts to which the government points in support of its argument that the district court had personal jurisdiction over Nitsua through Austin are (1) Austin was a defendant in the related criminal proceeding and (2) the government mailed a copy of the civil forfeiture complaint to Austin's criminal attorney. The court's exercise of personal jurisdiction over Austin in the criminal proceeding, however, did not automatically confer jurisdiction on the court in the related civil proceeding. The government made no showing that Austin's criminal defense attorney was authorized to accept service for him in the civil forfeiture action. *See* Fed.R.Civ.P. 4(d)(1) (providing that service of process on an individual may be made by delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process"); *Santos v. State Farm Fire & Casualty Co.*, 902 F.2d 1092, 1094 (2d Cir.1990) ("[S]ervice of process on an attorney not authorized to accept service for his client is ineffective. . . ."); *Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir.) ("[S]ervice of process is not effectual on an attorney solely by reason of his capacity as an attorney."), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). Finally, at the time the district court entered judgment for the government, Austin had not otherwise consented to the court's exercise of personal jurisdiction over him in the civil forfeiture action.

Having determined that the court did not have jurisdiction over Nitsua through Austin, we next consider whether it otherwise had jurisdiction over Nitsua. The government did not establish that Nitsua was served with the civil forfeiture complaint in accordance with Fed.R.Civ.P. 4. Nonetheless, several courts have held that a claimant may submit itself to the personal jurisdiction of the court by appearing in an in rem civil forfeiture action. *See, e.g., Accounts Nos. 3034504504 & 144–07143*, 971 F.2d at 983–84; *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330, 335 & n. 6 (5th Cir.1978).

In contrast, the Eleventh Circuit has suggested that a claimant does not consent to the court's exercise of in personam jurisdiction by filing a claim in an in rem action. *United States v. 6960 Miraflores Ave.*, 932 F.2d 1433, 1436 (11th Cir.1991) (stating that in an in rem action, the property is the defendant and the claimants are merely invited to file claims; the claimants are neither named as defendants nor "summoned into court under Fed.R.Civ.P. 4"), *rev'd on other grounds sub nom Republic Nat'l Bank v. United States*, —— U.S. ——, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992). The Eleventh Circuit also has held that when the government institutes a forfeiture action in rem, it does not consent to the court's exercise of in personam jurisdiction. *Id.* at 1436–37; *United States v. One Lear Jet Aircraft*, 836 F.2d 1571, 1576–77 (11th Cir.) (in banc), *cert. denied*, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988).

We reject the Eleventh Circuit's position that the government does not submit itself to the personal jurisdiction of the court when it institutes a forfeiture action. *Accord United States v. One Lot of $25,721.00 in Currency*, 938 F.2d 1417, 1420 (1st Cir.1991) (rejecting Eleventh Circuit's position in currency cases); *United States v. $95,945.18, U.S. Currency*, 913 F.2d 1106, 1109 (4th Cir. 1990); *United States v. Aiello*, 912 F.2d 4, 6–7 (2d Cir.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 757, 112 L.Ed.2d 777 (1991). The government chooses to invoke the court's jurisdiction when it files a forfeiture action. *See One Lear Jet Aircraft*, 836 F.2d at 1579–80 (Vance, J., dissenting). A claimant, on the other hand, has no such choice; a claimant must either file a claim or risk losing all interest in the property. Therefore, we hold that a claimant can appear in a forfeiture action and object to the court's exercise of personal jurisdiction if the claimant makes the objection in a timely fashion.

We turn then, to the facts presented here. Counsel entered a general appearance on behalf of Nitsua and moved the court to extend the time to file a claim and answer to the complaint in April of 1992. Thereafter, the government filed an amended motion for default, to which Nitsua responded in June.

Nitsua did not object to the court's exercise of personal jurisdiction in that response.[9] On October 1, new counsel entered a general appearance on behalf of Nitsua. Counsel did not raise the issue of lack of personal jurisdiction until the motion to dismiss filed October 8.

Federal Rule of Civil Procedure 12 provides that objections to personal jurisdiction or service of process must be raised in a party's first responsive pleading or by motion before the responsive pleading. *See Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir.1983) (holding that defenses set forth in Rule 12(h), which include lack of personal jurisdiction and ineffective service of process, must be raised in a party's "first defensive move"). "If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses." *Oaklawn Apartments*, 959 F.2d at 175.

■ Although Nitsua's initial appearance and motion for extension of time in which to file a claim were not defensive moves, *see Martinez v. Picker Int'l, Inc.*, 635 F.Supp. 658, 659 (D.P.R.1986), Nitsua's response to the government's amended motion for default was a defensive move that triggered the provisions of Rule 12(h). Therefore, Nitsua should have included its objection to the court's exercise of personal jurisdiction in its response to the motion for default. If Nitsua had objected to the court's exercise of in personam jurisdiction at the time it responded to the government's amended motion for default, the objection would have been timely. Nitsua's failure to object in a timely fashion, however, waived the defense. *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398–99 (7th Cir.1993) (holding that party waived objection to court's exercise of personal jurisdiction when it failed to include objection in its initial motion to vacate the entry of default); *cf. Accounts Nos. 3034504504 & 144–07143*, 971 F.2d at 983–84 (applying waiver provisions of Rule 12(h) to claimant in civil forfeiture action); *953 E. Sahara*, 807 F.Supp. at 582 (same).

Having concluded that the district court had personal jurisdiction over Nitsua, we must consider whether it properly disposed of the other issues in the case.

### III. Necessity of Preseizure Notice & Hearing.

Nitsua contends that the government violated its due process rights by seizing the subject properties without first providing Nitsua with notice and an opportunity to be heard. Therefore, Nitsua argues, the court should set aside the forfeiture, or, at minimum, return to Nitsua any rents collected on the properties prior to the final forfeiture order and void any service of process made pursuant to Supplemental Rule C(4).

■ Neither 18 U.S.C. § 981 nor Supplemental Rule C(3) requires that interested parties be given notice and a hearing before property is seized for purposes of forfeiture. Nonetheless, as a general rule, due process requires that a person be given notice and an opportunity for a hearing before being deprived of a property interest. *Fuentes v. Shevin*, 407 U.S. 67, 81–82, 92 S.Ct. 1983, 1994–1995, 32 L.Ed.2d 556 (1972).

" '[E]xtraordinary situations' that justify postponing notice and opportunity for hearing," *id.* at 90, 92 S.Ct. at 1999 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)), may arise when "the seizure [is] directly necessary to secure an important governmental or general public interest;" "there [is] a special need for very prompt action;" and "the [government keeps] strict control over its monopoly of legitimate force: the person initiating the seizure [is] a government official responsible for determining, under the standards of a narrowly drawn statute, that it [is] necessary and justified in the particular instance," *id.* 407 U.S. at 91, 92 S.Ct. at 2000. In *Calero–Toledo v. Pearson Yacht Leasing Co.*, the Supreme Court held that the seizure of a yacht for purposes of forfeiture under the laws of Puerto Rico was "one of those ' "extraordinary situations" ' that justify postpon-

---

9. Neither party included Nitsua's Response to Plaintiff's Amended Motion for Default Judgment and Final Order of Forfeiture in its appendix.

Therefore, the court has sua sponte supplemented the record on appeal with a copy of this response.

ing notice and an opportunity for a hearing.' " 416 U.S. 663, 677, 94 S.Ct. 2080, 2088, 40 L.Ed.2d 452 (1974) (quoting *Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999)).

The Supreme Court recently distinguished its opinion in *Calero–Toledo,* however, when considering a civil forfeiture of real property. The Court noted that in *Calero–Toledo,* the government's interest in seizing the property immediately "justified dispensing with the usual requirement of prior notice and hearing;" "immediate seizure was necessary to establish the court's jurisdiction over the property" and because the property "might have disappeared had the Government given advance warning of the forfeiture action." *United States v. James Daniel Good Real Property,* — U.S. —, — – —, 114 S.Ct. 492, 502–03, 126 L.Ed.2d 490 (1993). "Neither of these factors is present when the target of forfeiture is real property," however. *Id.* at —, 114 S.Ct. at 503.

"[W]hen the res [to be forfeited] is real property, rather than personal goods, the appropriate forum may be determined without actual seizure. . . . [T]he res may be brought within the reach of the court simply by posting notice on the property and leaving a copy of the process with the occupant." *Id.* Likewise, actual seizure of the property is not necessary to further the government's legitimate interests under the forfeiture statute, which include "ensur[ing] that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment." *Id.*

> Sale of the property can be prevented by filing of a *lis pendens* as authorized by state law when the forfeiture proceedings commence. If there is evidence, in a particular case, that an owner is likely to destroy his property when advised of the pending action, the Government may obtain an *ex parte* restraining order, or other appropriate relief, upon a proper showing in district court. . . . Finally, the Government can forestall further illegal activity with search and arrest warrants obtained in the ordinary course.

*Id.* at — – —, 114 S.Ct. at 503–04.

Therefore, "in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment prohibits the Government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportunity to be heard." *Id.* at —, 114 S.Ct. at 497. "To establish exigent circumstances, the Government must show that less restrictive measures—*i.e.,* a *lis pendens,* restraining order, or bond— would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the property." *Id.* at —, 114 S.Ct. at 505.

■ The government argues on appeal that exigent circumstances exist here to justify postponing notice and a hearing until after the seizure. Specifically, the government contends that pursuant to the money-laundering scheme for which he was convicted, Austin and others "frequently transferred title to defendant properties through numerous entities, names, and individuals in various states, in an effort to continue to control the properties while keeping hidden." Appellee's Br. at 29–30. Had Austin or Nitsua been given notice and an opportunity to be heard before the properties were seized, the government maintains, they "would have launched another level of quit claim deeds and other purported property transfers to other real and fictitious or front entities in yet more attempts to continue to conceal the assets from the United States." *Id.* at 30. The government's interest in preventing Austin or Nitsua from further concealing their real property assets through subsequent transfers could, however, be protected through the use of less restrictive measures than seizing the property. Because the government has not shown that exigent circumstances justified dispensing with notice and a hearing before the properties at issue were seized, the seizure violated Nitsua's right to due process.

■ The illegality of the seizure, however, does not necessarily invalidate the forfeiture. *See United States v. James Daniel Good Property,* 971 F.2d 1376, 1384 (9th Cir.1992), *aff'd in part, rev'd in part,* — U.S. —, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); *United States v. 4492 S. Livonia Rd.,* 889 F.2d 1258, 1265–66 (2d Cir.1989) (and

cases cited therein). The judgment of forfeiture may still stand, "so long as impermissibly obtained evidence is not used in the forfeiture proceeding." *4492 S. Livonia Rd.*, 889 F.2d at 1265. The government, however, must return to Nitsua the rents that accrued during the illegal seizure of the properties at issue. *See James Daniel Good Property*, 971 F.2d at 1384.

### IV.  Reasonableness of Means Employed to Give Notice.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315, 70 S.Ct. at 657.

The Supplemental Rules require the government to give notice of the forfeiture proceedings only by publication. *See* Fed. R.Civ.P. C(4). When the government can reasonably ascertain the name and address of an interested party, however, notice by publication is not sufficient, *Mullane*, 339 U.S. at 317–18, 70 S.Ct. at 658–59; *Walker v. City of Hutchinson*, 352 U.S. 112, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956); due process requires that the government send "[n]otice by mail or other means as certain to ensure actual notice," *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983). Due process does not require, however, that the interested party actually receive notice. *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989). So long as the government "acted reasonably in selecting means likely to inform [the] persons

affected, ... then it has discharged its burden." *Id.*

Nitsua argues that the government did not employ means reasonably calculated to inform Nitsua of the forfeiture proceedings and give it an opportunity to file a timely claim and answer pursuant to Supplemental Rule C(6). *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' "). Specifically, Nitsua contends the government sent it notice at an address the government knew or should have known was not likely to be effective, even though the government had been using another address to subpoena documents from Nitsua in connection with the criminal proceedings against Austin.

Whether the government employed means reasonably calculated to provide Nitsua actual notice is a question of fact, *see Taft v. United States*, 824 F.Supp. 455, 465 (D.Vt.1993), which we review for clear error, *see O'Connor v. R.F. Lafferty & Co.*, 965 F.2d 893, 901 (10th Cir.1992). Although the district court did not make a specific finding that the means employed by the government to give Nitsua notice were reasonable, we can infer such a finding from the court's ultimate finding that the notice to Nitsua was sufficient.

The government sent notice to Nitsua in care of James Gasper at an address in La Jolla, California, that was reflected on the recorded deed to the subject properties, executed in February 1989, as well as in the County Treasurer's records in New Mexico.[10] The government does not dispute Nitsua's representation that this notice was returned undelivered. Six months before it sent the notice to La Jolla, the government was aware that Gasper had ceased any activities with Nitsua in the summer of 1989. Furthermore, the record contains a July 1990 letter, concerning a subpoena, from the government

---

**10.** We have sua sponte supplemented the record on appeal with a copy of the recorded deed, which was introduced into evidence in the district court at the hearing and was attached to the

government's Response in Opposition to, and Motion to Strike, Nitsua Management's Motion for Extension of Time to File Claim and Answer to Complaint.

to the custodian of records for Nitsua at an address in Florida.[11]

If the government had sent notice to Nitsua only at the La Jolla address, we might be inclined to agree with Nitsua that the government's actions were not reasonably calculated to give Nitsua actual notice of the forfeiture proceedings. *See Sarit v. United States DEA,* 987 F.2d 10, 14 (1st Cir.) (noting that the Supreme Court has overturned notice "even where formal procedures were followed if the notifying party knew or had reason to know that notice would be ineffective"), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993).

The government, however, did not send notice solely to the address in La Jolla. It also sent notice to Austin through his criminal defense attorney. Based on the district court's unchallenged finding that Austin was the alter ego of Nitsua, notice to Austin was notice to Nitsua.[12] Counsel's representation of Austin was ongoing at the time the government commenced the civil forfeiture proceeding, and the latter proceeding arose out of the criminal conduct for which counsel was defending Austin. The evidence showed that Austin had actual knowledge of the forfeiture proceedings. Moreover, although Nitsua has argued that the government did not send notice to it at the proper address, it has never denied receiving actual notice of the forfeiture proceedings and of the steps it should take to defend against those proceedings.[13]

Under the particular circumstances here, giving notice to Austin's counsel was reasonably calculated to inform Nitsua of the forfeiture proceedings and of the need to file a claim and answer pursuant to Supplemental Rule C(6). *See United States v. One 1987 Jeep Wrangler Auto.,* 972 F.2d 472, 479 (2d Cir.1992) (stating that service of notice of administrative seizure on claimant's attorney notified claimant of procedures available to contest forfeiture); *Gutt v. United States,* 641 F.Supp. 603, 606 (W.D.Va.1986) (holding that sending notice of the forfeiture proceedings only to the claimant at a hotel, and not to the claimant's counsel, was not sufficient when the government knew that the claimant no longer resided at the hotel and that the claimant was represented by counsel); *cf. Taft,* 824 F.Supp. at 465 (remanding for district court to determine whether government knew or should have known that claimant was represented by counsel in a pending criminal proceeding and, if so, whether it would have been reasonable to provide the claimant notice through counsel once the notice sent to the claimant's property was returned unclaimed).

That the government knew of additional addresses that also might have been reasonably calculated to provide Nitsua actual notice does not undermine the validity of the notice the government actually sent. The government is not required to send notice to every source reasonably calculated to provide

---

11. Although counsel for Nitsua argued in the district court that the government had been using this Florida address successfully to subpoena documents from Nitsua, no actual evidence of this fact was submitted. *See United States v. Approximately Two Thousand, Five Hundred Thirty–Eight Point Eighty–Five (2,538.85) Shares of Stock,* 988 F.2d 1281, 1288 n. 9 (1st Cir.1993) (stating that counsel's representation as to the date property was seized was "not an adequate substitute for a record showing"). We also note, however, that the evidence showed that at the time the government commenced the civil forfeiture proceeding, it had a current address in California for Nitsua, Austin, and Pat Cass, whom the government knew was a signatory on Nitsua's bank account and was involved in overseeing the properties in New Mexico.

12. Notice of the forfeiture proceedings for purposes of due process is distinct from service of

process for purposes of obtaining personal jurisdiction. Therefore, our earlier holding that mailing notice to Austin's attorney was not sufficient to obtain personal jurisdiction over either Austin or Nitsua does not preclude a determination that notice of the proceedings sent to Austin's attorney was reasonably calculated to give Austin and, therefore, Nitsua, sufficient notice to satisfy due process concerns.

13. In the district court, counsel for Nitsua admitted that because Nitsua's principals did not want to get involved in the criminal action, they were not "in any hurry to step forward and make claims.... No one knew until December 30, 1991 if Donald Austin would be convicted." App. to Appellant's Br. at 5b. This suggests that Nitsua knew it needed to file a claim to the properties but chose not to do so until the criminal proceedings were concluded.

actual notice, absent extraordinary circumstances that do not exist here.

## V. Particularity of the Complaint.

The Supplemental Rules require that a forfeiture complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed.R.Civ.P. E(2)(a). Failure to comply with Supplemental Rule E(2)(a)'s particularity requirements may result in a dismissal of the complaint without prejudice. *See United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties,* 941 F.2d 1428, 1440 n. 28 (11th Cir.1991); *United States v. Pole No. 3172, Hopkinton,* 852 F.2d 636, 638 (1st Cir.1988).

Although Nitsua argues that the government's second amended complaint did not set forth the basis for forfeiting the subject properties with sufficient particularity, Nitsua does not seek to have the complaint dismissed. Rather, Nitsua argues that the government's failure to comply with Supplemental Rule E(2)(a) should relieve Nitsua of Supplemental Rule C(6)'s time requirements for filing a claim and answer.

While some courts have held that a claimant is not bound by the time requirements in Supplemental Rule C(6) when the government fails to execute process correctly, *see, e.g., United States v. $84,740.00 U.S. Currency,* 900 F.2d 1402, 1406 (9th Cir.1990); *United States v. $38,000.00 in U.S. Currency,* 816 F.2d 1538, 1545, 1547 (11th Cir.1987), Nitsua cites no authority, and we have found none, suggesting that the government's failure to comply with the particularity requirements of Rule E(2)(a) constitutes a failure to execute process correctly. Nor does Nitsua cite any authority holding that the provisions of Rule E(2)(a) are jurisdictional and, therefore, can be raised at any time.

Because the failure to comply with nonjurisdictional pleading requirements ordinarily is waived if not objected to in a timely fashion, *see, e.g.,* Fed.R.Civ.P. 12(b), we must first determine whether the district court properly denied Nitsua's motion to file a late claim and answer, before deciding whether Nitsua may challenge the particularity of the allegations in the complaint. If the district court did not err in denying Nitsua's motion to file a late claim and answer, then we need not address whether the complaint stated the circumstances from which the forfeiture claim arose with sufficient particularity.

## VI. Motion to File Late Claim & Answer.

Supplemental Rule C(6) provides that a claimant must "file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim." Although the district court has discretion to extend the time in which a claimant must file a claim, "the court's discretion is not unbounded." *United States v. 1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1436 (9th Cir.1985). The court should exercise its discretion to allow a late claim only if "the goals underlying the time restriction and the verification requirement are not thwarted." *Id.*

The purpose of the time restriction in Supplemental Rule C(6) is "to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay." *1982 Yukon Delta Houseboat,* 774 F.2d at 1436. The purpose of the verification requirement is to prevent false claims. *See id.; United States v. Currency $267,961.07,* 916 F.2d 1104, 1108 (6th Cir.1990). The government commenced this civil forfeiture action in July 1991. Nitsua did not attempt to file a claim or otherwise assert any claim of ownership to the property until almost a year later, after the government had moved for default. Permitting a late filing under these circumstances would not further the goal of Supplemental Rule C(6)'s time requirements.

Moreover, the equities do not favor granting Nitsua additional time. *See United States v. Borromeo,* 945 F.2d 750, 753 (4th Cir.1991) (noting that "whether a particular claimant's circumstances constitute 'excusable neglect' ... is equity-ridden" and discussing factors courts have considered when balancing the equities). We have determined

that notice to Nitsua was good, and counsel for Nitsua admitted that at least one of Nitsua's principals was aware of the seizure and the forfeiture proceedings "not long after [they] occurred." App. to Appellee's Br., Tr. at 16. Nonetheless, Nitsua did not attempt to assert an interest in the property until almost a year after the forfeiture proceedings were commenced. Nitsua has neither suggested nor established that the government either encouraged the delay or misguided Nitsua in any way. Finally, and perhaps most significantly, Nitsua's counsel indicated that although Nitsua knew about the forfeiture proceedings, it purposely waited until after the criminal proceedings were concluded before filing a claim so as not to become entangled in the criminal action. *See supra* at n. 13. Under the circumstances, the district court did not abuse its discretion in refusing to grant Nitsua additional time in which to file a claim and answer.[14]

In light of Nitsua's failure to file a timely claim and answer, we need not address Nitsua's argument that the government's second amended complaint failed to plead the facts giving rise to its forfeiture claim with sufficient particularity. Further, we note that at the hearing on its motion for default, the government presented evidence that the district court found sufficient to support a finding of probable cause to forfeit the property. *See United States v. On Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1292 (7th Cir.1990) ("The government's burden in a civil forfeiture case is merely to establish probable cause to believe that the defendant property is subject to forfeiture."), *cert. denied*, —— U.S. ——, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991). Nitsua does not challenge the evidentiary basis for that finding on appeal.

## VII. Conclusion.

The district court did not have in rem jurisdiction over the property and, therefore, could not enter a judgment of forfeiture in favor of the government as against the whole world. Nonetheless, the court did have personal jurisdiction over Nitsua and, therefore, could enter a judgment in favor of the government as against Nitsua.

Because the government should have provided Nitsua notice and an opportunity to be heard before it seized the property, the seizure was illegal. Although the illegal seizure did not invalidate the forfeiture, itself, the government must return to Nitsua the rents collected prior to the entry of judgment against Nitsua. Because the notice the government provided Nitsua after the seizure was reasonably calculated to provide Nitsua actual notice, the entire forfeiture need not be set aside as void. The district court did not abuse its discretion in refusing to allow Nitsua to file a late claim and answer or in denying Nitsua's motion to continue the hearing on the parties' respective motions. Because Nitsua does not challenge the district court's finding that probable cause exists to believe the property is subject to forfeiture, the judgment of forfeiture is affirmed as against Nitsua.

The judgment of the United States District Court for the District of Colorado is AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for further proceedings consistent with this opinion.

---

**14.** Nitsua also argues on appeal that the district court abused its discretion in denying Nitsua's motion to continue the hearing set on Nitsua's motion to file a late claim and answer and the government's motion for default. Because the hearing had been continued twice before, the district court said it would not grant Nitsua a continuance unless the government agreed to it; the government would not so agree.

Counsel for Nitsua renewed the motion for continuance at the hearing, arguing that he was not prepared because Nitsua's previous counsel had not yet released to him all the documentation concerning Nitsua's status as a trust and because he had not had the opportunity to subpoena witnesses. Based on our review of the record, it appears that counsel could have presented much of the necessary evidence through either the affidavits or the live testimony of the principals of his client, whose appearance one would expect counsel to be able to secure without the need for a subpoena. Counsel made no attempt to supply such evidence, however, or to explain his failure to do so. Under the circumstances, we conclude the district court did not abuse its discretion in denying Nitsua's motion to continue the hearing.