FILED
United States Court of Appeals
Tenth Circuit

February 14, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JEFFREY J. SPERRY,

        Plaintiff-Appellant,

v.

ROGER WERHOLTZ,

        Defendant-Appellee.

No. 10-3145
(D.C. No. 5:04-CV-03125-CM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

Plaintiff Jeffrey J. Sperry, an inmate in the custody of the Kansas

Department of Corrections (KDOC), brought this pro se action under 42 U.S.C.

§ 1983 against defendant Roger Werholtz, Secretary of KDOC. Mr. Sperry

alleges that, in 2004, defendant Werholtz violated his First Amendment rights by:

(1) amending Kansas Administrative Regulation § 44-12-313 to prohibit the

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

possession of sexually explicit materials by inmates in state correctional facilities; and (2) subsequently forcing Mr. Sperry to dispose of 10-12 adult magazines and an engraved cup in order to comply with the amended regulation.[1] The district court granted summary judgment in favor of defendant Werholtz on Mr. Sperry's First Amendment claim, concluding that defendant Werholtz's affidavit testimony complied with the requirements of Fed. R. Civ. P. 56(e)(1)[2] and established that the amended regulation was reasonably related to legitimate penological interests. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the entry of summary judgment in favor of defendant Werholtz on Mr. Sperry's facial constitutional challenge to Kansas Administrative Regulation § 44-12-313.

---

[1]    In the district court proceedings, Mr. Sperry also asserted claims against defendant Werholtz under the Fourth and Fourteenth Amendments.  He has not raised any issues pertaining to those claims in his opening brief, however, and the claims are therefore "deemed abandoned or waived." *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997).

[2]    Fed. R. Civ. P. 56 was amended effective December 1, 2010.  As part of the amendments, Rule 56(e)(1) was renumbered as Rule 56(c)(4) and the language of the rule was slightly modified, but no pertinent substantive changes were made to the rule.  In accordance with our precedent, we will apply the version of the rule in effect at the time of the district court's decision. *See United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1310 n.6 (10th Cir. 1994) (applying procedural rule in effect at time of relevant event in district court rather than amended version); *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1186 n.4 (10th Cir. 2009) (same).

## I. Background

Defendant Werholtz has served as Secretary of the KDOC since January 2003. *See* R., Doc. 126, Ex. 1 at 1, ¶ 1. In his capacity as Secretary, defendant Werholtz is the chief executive officer of the KDOC. *See* Kan. Stat. Ann. § 75-5203(a). His official duties include, among other things, enacting and enforcing administrative regulations applicable to inmates committed to his custody. *See* R., Doc. 126, Ex. 1 at 1, ¶ 2. Prior to his appointment as Secretary, defendant Werholtz "served in a variety of positions in the KDOC, including senior administrative posts such as Deputy Secretary for the Divisions of Community and Field Services, Programs and Staff Development, and Facilities Management, with a total service record of more than 27 years." *Id.* at 1, ¶ 1.

During his tenure as Secretary, defendant Werholtz "promulgated a temporary amendment of K.A.R. 44-12-313 – 'Sexually explicit materials' (formerly entitled 'Obscenity'), effective March 19, 2004, followed by a permanent amendment, effective July 2, 2004." *Id.* at 1, ¶ 3. The amended regulation provided as follows:

> (a) No inmate shall have in possession or under control any sexually explicit materials, including drawings, paintings, writing, pictures, items, and devices.

> (b) The material shall be considered sexually explicit if the purpose of the material is sexual arousal or gratification and the material meets either of the following conditions:

(1)  Contains nudity, which shall be defined as the depiction or display of any state of undress in which the human genitals, pubic region, buttock, or female breast at a point below the top of the aerola is less than completely and opaquely covered; or

(2) contains any display, actual or simulated, or description of any of the following:

(A)  Sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital, and anal-oral contact, whether between persons of the same or differing gender;

(B)  masturbation;

(C)  bestiality; or

(D)  sadomasochistic abuse.

Kan. Admin. Regs. § 44-12-313(a) and (b) (2004).

In the affidavit that he submitted to the district court in support of his motion for summary judgment, defendant Werholtz set forth the reasons for why he promulgated the amended regulation.  *See* R., Doc. 126, Ex. 1 at 2-3, ¶¶ 5-12. As summarized by the district court, those reasons were as follows:

Defendant decided to prohibit sexually explicit publications and items from correctional facilities to help with institutional security, facilitate rehabilitation of sex offenders, and prevent sexual harassment.  Through his affidavit, defendant testified that he made the decision for the following reasons: Sexually explicit materials are a general impediment to the preservation of security at KDOC facilities.  They can reasonably be expected to lead to the open performance of lewd acts, which disrupts overall security and order. The possession of sexually explicit materials can openly identify an inmate as homosexual and create an immediate security concern, as such inmates are often targeted for exploitation or violent attack. Sexually explicit materials disrupt and interfere with the treatment and management of sex offenders.  The blanket ban prevents sex

-4-

offenders from having access to such materials directly or by illicit dealing and trading of sexually explicit materials with non-sex offenders. The materials may also be used to sexually harass staff members. There was a potential for staff to file sexual harassment complaints due to exposure to the materials in the workplace environment. Prior to the amendments to Kan. Admin. Regs. § 44-12-313, KDOC had received complaints from prison staff about being required to view these materials while performing their duties. Inmates had also made comments referencing comparisons between prison staff and individuals in the publications or other materials.

. . . .

Defendant also testified that prior to the amendments to Kan. Admin. Regs. § 44-12-313, KDOC staff spent excessive amounts of time: (1) reviewing publications to determine what was allowable and what was not; (2) processing and deciding appeals from the initial decision; and (3) processing notifications and other information related to ordering, receiving, or failing to receive such materials. Defendant further testified that (1) there was not an easier alternative in dealing with sexually explicit materials; (2) redacting the prohibited material was not a workable alternative because KDOC receives mail for thousands of inmates; and (3) it would be costly and cumbersome for staff members to redact the sexually explicit material from each publication.

R., Doc. 134 at 9-10.

On March 22, 2004, KDOC inmates were provided notice of the amendment to Kansas Administrative. Regulation § 44-12-313, and they were informed that they had until May 1, 2004, to dispose of all property containing sexually explicit material. *See* R., Doc. 126, Ex. 1 at 4, ¶ 13. The inmates were permitted to either mail such property to a person of their choosing or they could destroy the property. *Id.* On April 29, 2005, in order to comply with the

amended regulation, Mr. Sperry mailed "a box of adult magazines and an engraved cup" to the district court "to be entered into evidence." *Id.*, Doc. 6.

## II. Analysis

### A. Motion to Strike Defendant Werholtz's Affidavit.

After defendant Werholtz filed his motion for summary judgment and his supporting affidavit, Mr. Sperry filed a motion to strike the affidavit on the ground that it did not comply with the requirements of Fed. R. Civ. P. 56(e)(1). After thoroughly reviewing all of the material statements in defendant Werholtz's affidavit, the district court found that the affidavit complied with Rule 56(e)(1), and the court therefore denied the motion to strike. *See* R., Doc. 134 at 1-7. On appeal, Mr. Sperry argues that the district court erred in failing to strike defendant Werholtz's affidavit because: "(1) [it] contained nothing but conclusory allegations that were not supported by any facts or evidence; (2) [it] contained conclusory allegations on expert matters for which defendant was not qualified to make; [and] (3) [it] contained falsehoods that were conclusory and self serving in order to make a sham fact issue." Aplt. Opening Br. at 3.

In the context of a motion for summary judgment, we review a district court's rulings on the admissibility of statements in an affidavit for an abuse of discretion. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "Under this standard, a trial court's decision will not be reversed unless the appellate court has a definite and firm conviction that the lower court made a

clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (quotation omitted).

"Fed. R. Civ. P. 56(e) . . . governs the admissibility of affidavits at the summary judgment stage[.]" *Id.* The rule provides that an affidavit submitted in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). With regard to the second requirement, we must determine whether the district court abused its discretion in determining that the material statements in defendant Werholtz's affidavit are admissible under the Federal Rules of Evidence, and two specific rules govern that inquiry. First, Fed. R. Evid. 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Second, Fed. R. Evid. 701 governs opinion testimony by lay witnesses such as defendant Werholtz, and the rule provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Fed. R. Evid.] 702.

Fed. R. Evid. 701.

As noted by the district court, defendant Werholtz's affidavit "relies on his years of experience with KDOC." R., Doc. 134 at 2. In refusing to strike defendant Werholtz's affidavit, the district court also relied on "[t]he qualifications, responsibilities, and duties of the Secretary of KDOC [as] set forth in the Kansas statutes." *Id.* As the district court explained:

> [The Secretary's] responsibilities include providing general supervision and management of the correctional institutions within Kansas. Kan. Stat. Ann. § 75-5205. He has the power, and duty, to: (1) examine and inquire into all matters connected with the government and discipline of the correctional institutions; (2) require reports from the warden or other officers of any Kansas correctional institution in relation to any or all correctional matters; and (3) have free access to the correctional institutions at all times, and all the books, papers, accounts and writings pertaining to the correctional institutions, or to the business, government, discipline or management of the correctional institutions. Kan. Stat. Ann. § 75-5251.

*Id.* at 3.

Given defendant Werholtz's extensive experience and responsibilities as a senior administrator in the KDOC, we conclude that the district court did not abuse its discretion in "find[ing] that the following statements were made with personal knowledge, that the statements [were] admissible facts, and that defendant [was] competent to testify as to them." *Id.*

1. *Sexually explicit materials, in any form, tend to disrupt the overall security of a correctional facility.*

Mr. Sperry argues that "[t]his assertion is strictly conclusory and unsupported by any evidence whatsoever, not even by an explanation as to how it

-8-

is a security threat.  Moreover, KDOC has permitted sexually explicit material for decades without incident[.]"  Aplt. Opening Br. at 3.  We reject Mr. Sperry's challenge to this statement and adopt the following reasoning of the district court:

> Plaintiff argues this statement has to be false because sexually explicit materials were permitted in KDOC facilities for decades "without any security issues whatsoever."  Plaintiff's only support for his allegation is that he has never heard of any incident in which sexually explicit material created a security threat.  Plaintiff is an inmate within a KDOC facility.  Nothing in the record suggests that he would be knowledgeable about the security threats throughout the entire KDOC.  Defendant, on the other hand, has personal knowledge of the potential security issues pertaining to each of the correctional facilities within KDOC.  He has served the KDOC for more than 27 years in a variety of positions.  As Secretary, he has access to information regarding security threats throughout KDOC.  Plaintiff's limited experience at KDOC does not establish that defendant is making false statements about the effects sexually explicit materials have on the security of correctional facilities.  The court finds that defendant's statement complies with Rule 56(e).

R., Doc. 134 at 3-4.

2. *Prior to the amendment to the regulation in question, there had been complaints from KDOC staff about having to review sexually explicit materials while performing their duties.*

Mr. Sperry argues that "[n]ot only is this assertion completely conclusory as it does not say who made the complaint[s], defendant specifically stated [in a discovery response] that no such complaints exist."  Aplt. Opening Br. at 3.  As noted by the district court, however, "[d]efendant's statement in his affidavit says that there had been complaints, not that the complaints were written or memorialized in writing.  Defendant's discovery response merely indicated that

he did not possess any documents regarding the complaints; it did not say that he never received any complaints." R., Doc. 134 at 4. Consequently, we agree with the district court that "[t]he record supports that defendant has personal knowledge of these types of complaints. His experience with the KDOC would have exposed him to such complaints and nothing in the record suggests that this statement is false." *Id.*

3. *There is a potential for KDOC to suffer lawsuits from KDOC employees due to exposure to sexually explicit materials.*

Mr. Sperry claims that this statement is an impermissible legal opinion because defendant Werholtz is not a legal expert. We agree with the district court, however, that this statement is admissible opinion testimony by a lay witness under Fed. R. Evid. 701. As the district court explained:

> As Secretary of KDOC, defendant is responsible for the general supervision and management of the correctional institutions. It is within his job duties to be aware of situations that would expose KDOC to lawsuits. In his affidavit, defendant testified that KDOC employees had complained about being exposed to sexually explicit materials. He is not opining on the merits of such lawsuits, he merely states that the sexually explicit material exposes KDOC to lawsuits. His statement regarding potential lawsuits is within his realm of personal knowledge.

R., Doc. 134 at 4-5.

4. *Homosexual inmates are identified by receiving homosexual publications which subjects them to exploitation and attack by other inmates.*

Mr. Sperry challenges this statement based on his assertion that "homosexual inmates receive openly homosexual publications that are not sexually explicit regularly without being harmed or exploited." Aplt. Opening Br. at 3A. But as the district court found, Mr. Sperry's "complaint goes to the weight, not the truth, of defendant's statement. Defendant's statement is not negated by the fact inmates receive other homosexual publications." R., Doc. 134 at 5.

5. *Another concern addressed by the amended regulation is the potential for sexually explicit materials to promote paraphilias and sexual deviance. Best practices in current corrections management of sex offenders includes addressing, managing, and treating paraphilias manifested by sex offenders. The prohibition in question directly serves that purpose.*

Mr. Sperry argues that defendant Werholtz should be prohibited from giving expert testimony regarding the treatment of sex offenders and whether sexually explicit materials promote paraphilias and sexual deviance because he "is not a mental health expert who would be permitted to testify to the impact of sexually explicit material on the human mind." Aplt. Opening Br. at 3A. As the district court explained, however, defendant Werholtz's "statement is not an expert opinion, it merely says that the amendment addresses the *potential* for such material to promote paraphilias and sexual deviance." R. Doc. 134 at 7. Thus,

we agree with the district court that "[b]ased on defendant's years of experience in corrections administration and dealing with sex offenders, . . . the statement is admissible under [Fed. R. Evid. 701]." *Id.*

> 6.  *The regulation in question reduced the amount of resources KDOC has to spend reviewing and censoring publications, and appeal procedure from such censorship.*

Mr. Sperry claims that this statement is false because "during discovery, [he] received documentation revealing all of the publication censorships since 1995. It was revealed that for [the] 9 years prior to the 2004 amendment, KDOC only censored 108 publications, whereas, in the five years after the amendment, they censored 1,087 publications[.]" Aplt. Opening Br. at 3A. We agree with the district court, however, that "[t]his alone does not make defendant's statement false." R., Doc. 134 at 5. As the district court explained:

> Defendant's statement is based on his many years of experience in corrections administration. He has personal knowledge of the amount of resources KDOC spent reviewing publications, processing and deciding appeals, processing notifications and other information, and managing sex offenders who received such materials by illicit dealing and trading with non-sex offenders, as opposed to the amount of resources KDOC now spends after the amendments.
> . . . [D]efendant's statement is reliable and properly submitted in support of defendant's motion for summary judgment.

*Id.*

7. *No alternative remedy could have been implemented.*

Mr. Sperry claims that this statement is false because "during discovery defendant was asked what other options were considered before the decision to out-right censor, in derogation of the First Amendment, was decided upon, and he cited no other options that were considered." Aplt. Opening Br. at 3B. But as noted by the district court, "defendant objected to [Mr. Sperry's] interrogatory 'as argumentative, assuming facts not in evidence, and assuming the truth of facts that are in dispute in this matter,'" R., Doc. 134 at 6, and "[d]efendant did not indicate whether he had considered alternative remedies," *id.* As a result, we agree with the district court that "[d]efendant's discovery response [did] not contradict [his] statement or support plaintiff's assertion that [the] statement [was] false."[3] *Id.*

---

[3] We also reject Mr. Sperry's claim that defendant Werholtz submitted his affidavit to the district court in an attempt to create a "sham" fact issue. Simply put, the statements in defendant Werholtz's affidavit did not contradict any prior testimony that he gave in the district court proceedings because there was no prior testimony to contradict. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (noting that a "sham" fact issue may exist if a party submits a summary judgment affidavit contradicting his own prior testimony in the case). In addition, as the district court found, defendant Werholtz's "affidavit [did] not contradict his statements made or the information provided during discovery." R., Doc. 134 at 7.

In sum, we hold that the district court did not abuse its discretion in finding that defendant Werholtz's affidavit complied with the requirements of Fed. R. Civ. P. 56(e)(1).[4]

### B. Motion for Summary Judgment.

### 1. Standard of Review.

"We review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004). Under Rule 56(c)(2), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[4] Although we have concluded that the district court did not abuse its discretion in refusing to strike defendant Werholtz's affidavit, we agree with Mr. Sperry that paragraphs 5, 6, and 7 of the affidavit are very conclusory in terms of showing a rational connection between the ban on sexually explicit materials and the asserted penological interests of prison security, prevention of sexual harassment, and treatment of sex offenders. *See* R., Doc. 126, Ex. 1 at 2-3. As explained below, however, "the only question that we must answer is whether [defendant Werholtz's] judgment was 'rational,' that is, whether [he] might reasonably have thought that the [ban] would advance [the asserted penological] interests." *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999). As we have noted, this requires only a "minimal showing," *Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007), and defendant Werholtz has made such a showing here. Nonetheless, because of the important constitutional rights at issue in cases such as this one, we urge prison officials to be more thorough and specific in future cases.

matter of law." Fed. R. Civ. P. 56(c)(2).[5] "In applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). "In addition, we must construe a pro se appellant's complaint liberally." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quotation omitted).

## 2. Analysis Under *Turner v. Safley*.

"Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004). Thus, "when a prison regulation impinges on inmates' [First Amendment rights], the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In making the latter determination, a district court must analyze the challenged regulation under the four-part test established by the Supreme Court in *Turner*. As accurately summarized by the district court, this requires an examination of the following factors: "(1) whether a valid and rational connection exists between

---

[5] As set forth above, Fed. R. Civ. P. 56 was amended effective December 1, 2010. As part of the amendments, the former Rule 56(c)(3) was eliminated and replaced by the language that is now contained in Rule 56(a) and (c)(1)(A). In accordance with our precedent, we will apply the version of the rule in effect at the time of the district court's decision. *See 51 Pieces of Real Property*, 17 F.3d at 1310 n.6; *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1186 n.4.

the regulation and the asserted legitimate governmental interest; (2) whether alternative means of exercising the constitutional right remain available to inmates; (3) any effect accommodating the right would have on guards, inmates, and the allocation of prison resources; and (4) the absence of ready alternatives." R., Doc. 134 at 11 (citing *Turner*, 482 U.S. at 89-90); *accord Jacklovich*, 392 F.3d at 426; *Jones v. Salt Lake County*, 503 F.3d 1147, 1153-54 (10th Cir. 2007). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

As the district court explained, "[t]he first *Turner* factor is multifold. The court must determine whether the governmental objective underlying the regulation is legitimate and neutral and whether the regulation is rationally related to that objective." R., Doc. 134 at 11 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989)). "To show a rational relationship between a regulation and a legitimate penological interest, prison officials need not prove that the banned materials actually caused problems in the past, or that the materials are 'likely' to cause problems in the future." *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999) (citing *Thornburgh*, 490 U.S. at 417 and *Casey v. Lewis*, 4 F.3d 1516, 1521 (9th Cir. 1993)). In other words, empirical evidence is not necessarily required.

> Moreover, it "does not matter whether we agree with" the defendants or whether the policy "in fact advances" the jail's legitimate interests. *See Amatel* [*v. Reno*, 156 F.3d 192, 199 (D.C. Cir. 1998)].

-16-

The only question that we must answer is whether the defendants' judgment was "rational," that is, whether the defendants might reasonably have thought that the policy would advance its interests. *See id.*

*Id.*

We agree with the district court that the governmental objectives underlying Kansas Administrative Regulation § 44-12-313 are legitimate and neutral and that the regulation is rationally related to those objections. As the district court carefully and thoroughly explained:

> Defendant implemented the regulation for three reasons: (1) to protect institutional security; (2) to facilitate rehabilitation of sex offenders; (3) and to prevent sexual harassment. These rationales serve legitimate penological interests. [*Thornburgh*, 490 U.S.] at 415 (finding regulations expressly aimed at protecting prison security serve a purpose that is central to all other corrections goals); *Pell v. Procunier*, 417 U.S. 817, 823 (1974) ("[A]nother paramount objective of the corrections system is the rehabilitation of those committed to its custody"); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular likewise is legitimate.").
>
> Defendant's affidavit justifies the need for the regulation in relation to the governmental objectives. Sexually explicit materials can lead to the open performance of lewd acts, disrupting overall security and order. Possession of such materials also creates a security concern by identifying homosexual inmates, who are often targeted for exploitation or violent attack. Defendant also explained that sexually explicit materials interfere with the treatment and management of sex offenders. A blanket ban prevents non-sex offenders from trading or dealing the sexually explicit materials with sex offenders. Finally, the materials create a potential for sexual harassment complaints. Before the ban on sexually explicit material, prison staff complained about being required to view these materials while performing their duties, and inmates had made comments

-17-

comparing prison staff to the individuals in the materials. These are valid concerns that make the governmental objective underlying the regulation legitimate.

The regulation is neutral; it bans sexually explicit material due to its impact on prison security, regardless of gender or sexual orientation. *See Thornburgh*, 490 U.S. at 415-16 ("Where, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral' in the technical sense in which we meant and used that term in *Turner*."). Further, there is a rational connection between the regulation and the governmental objectives. The regulation banning sexually explicit material directly addresses each of the objectives set out by defendant. *See, e.g., Jones v. Salt Lake County*, 503 F.3d 1147, 1155-56 (10th Cir. 2007) ("The jail's ban on inmate access to 'sexually explicit material' and 'technical publications' is expressly aimed at advancing jail security and the ban on 'sexually explicit material' also protects the safety of jail personnel and other inmates."); *Mauro*, 188 F.3d at 1054 (noting the relationship between the jail's policy of prohibiting sexually explicit materials and the goals of preventing sexual harassment, inmate rehabilitation, and jail security is not so "remote as to render the policy arbitrary or irrational.").

R., Doc. 134 at 11-13.

We also agree with the district court's analysis of the remaining *Turner* factors. As the district court succinctly explained:

The second *Turner* factor–whether there is an alternative means of exercising the constitutional right–is satisfied where the regulation permits a broad range of publications to be sent, received, and read. *See Thornburgh*, 490 U.S. at 418. In this case, inmates may continue to subscribe to periodicals, as long as the incoming publication does not contain prohibited content, as well as access publications in the general prison library. The second factor is satisfied.

The third factor to be addressed under the *Turner* analysis is the impact that accommodation of the asserted constitutional right

will have on guards, inmates, and the allocation of prison resources. *Turner*, 482 U.S. at 90. As discussed above, the sexually explicit materials banned by the regulation can lead to the disruption of the overall security and order of the prison, lead to staff complaints, and thwart sex offender rehabilitation. According to defendant, if this regulation were to be removed, the staff would expend additional time and resources monitoring inmates to prevent the potential outcomes listed above. As he testified in his affidavit, sexually explicit materials lead to lewd acts and create the potential for violent attacks on homosexual inmates. He also testified that it is extremely difficult to keep sexually explicit materials away from sex offenders because having them in the prison creates a market for the contraband. And he explained the potential for sexual harassment complaints. Accommodating the exercise of plaintiff's right to possess sexually explicit material would have a negative effect on other prisoners, staff, and prison resources, thus the third *Turner* factor is also satisfied.

The final *Turner* factor requires the court to consider whether ready alternatives exist. "This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 90-91. Instead, if plaintiff can point to an alternative that fully accommodates his rights at *de minimis* cost to valid penological interests, the court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. *Id.* at 91. Here, plaintiff suggests as an alternative that KDOC house sex-offender inmates in a single cellhouse where it can assure that sex offenders do not have access to the material. Plaintiff asserts that this would be less costly than enforcing the regulation, but he does not support this allegation with any factual support. Furthermore, plaintiff's alternative remedy does not address the regulation's other governmental objectives-institutional security and sexual harassment. Plaintiff has not raised an issue of fact that an obvious, easy alternative exists that would accommodate his rights at *de minimis* cost to valid penological interests.

*Id.* at 13-14.

The judgment of the district court is AFFIRMED. Although the district court granted Mr. Sperry's motion for leave to proceed on appeal without prepayment of the appellate filing fee, we remind Mr. Sperry of his obligation to continue making partial payments until his entire appellate filing fee has been paid in full.

Entered for the Court

David M. Ebel
Circuit Judge