NOT DESIGNATED FOR PUBLICATION

Nos. 119,838
119,839
119,840
119,841
119,842

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN HERNANDEZ,
*Appellant*,

v.

SECRETARY OF CORRECTIONS, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed December 6, 2019. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Sherri Price*, special assistant attorney general, of Lansing Correctional Facility, for appellees.

Before GARDNER, P.J., GREEN and ATCHESON, JJ.

ATCHESON, J.:  Steven Hernandez, an inmate held in the Kansas prison system, filed a series of actions under K.S.A. 60-1501 challenging a Kansas Department of Corrections regulation requiring confiscation of incoming prisoner mail containing impermissible sexually oriented content. The Leavenworth County District Court denied Hernandez relief in five cases that have been consolidated on appeal. Based on the

1

arguments Hernandez has presented, we find no grounds to reverse the district court's rulings.

While incarcerated at the prisons in El Dorado and Lansing in 2016 and 2017, Hernandez requested various catalogues and magazines be mailed to him. Prison employees inspect incoming mail for inmates to make sure the materials do not amount to contraband or otherwise violate institutional regulations. During those inspections, employees identified several catalogues, an issue of Esquire magazine, and an issue of Hot Bike magazine addressed to Hernandez as violating K.A.R. 44-12-313, a regulation that prohibits inmates from possessing "sexually explicit materials." Prison officials confiscated the publications and notified Hernandez of their actions. Hernandez challenged the seizures through an established Department of Corrections review process to no avail. He then filed a separate habeas corpus action under K.S.A. 60-1501 attacking each seizure as a violation of his free speech rights protected in the First Amendment to the United States Constitution and his due process rights under the Fourteenth Amendment. The actions were filed in the Leavenworth County District Court, since Hernandez was then being confined at the Lansing prison. See K.S.A. 60-1501(a) (action to be filed in county where unconstitutional "restraint is taking place").

The district court held a joint hearing on all of the cases in February 2018 without formally consolidating them. The district court issued separate rulings in each case about two months later denying Hernandez any relief. Hernandez appealed all of the adverse rulings, and we consolidated the cases for briefing, argument, and decision.

As Hernandez has framed his appeal, we do not perceive any disputed material facts. The issues, therefore, present questions of law that we may resolve without any particular deference to the district court. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (appellate court exercises unlimited review over question of law); *State v. Bennett*, 51 Kan. App. 2d 356, 361, 347 P.3d 229 (when material facts undisputed, issue

presents question of law), *rev. denied* 303 Kan. 1079 (2015); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (legal effect of undisputed facts question of law).

Two Department of Corrections regulations figure in the issues Hernandez has raised on appeal. As we have indicated, K.A.R. 44-12-313 prohibits inmates from possessing sexually explicit materials. Pertinent here, the regulation identifies such materials as those having "the purpose of . . . sexual arousal or gratification and . . . contain[ing] nudity, which shall be defined as the depiction or display of any state of undress in which the human genitals, pubic region, buttock, or female breast at the point below the top of the aerola [*sic*] is less than completely and opaquely covered." K.A.R. 44-12-313(b)(1). The other regulation applies generally to inmate mail and outlines an internal procedure for inmates to contest the confiscation of incoming mail. K.A.R. 44-12-601 (2017 Supp.). If inmates challenge the seizure of materials, those items are sent by regular mail from the prison to the Department of Corrections headquarters in Topeka for administrative review. K.A.R. 44-12-601(d)(2)(D) (2017 Supp.) (protest forwarded to the secretary of corrections or his or her designee "for final review"). An inmate is required to pay the postage for delivery of the disputed materials to Topeka. But the Department of Corrections will advance the postage costs of official mail to indigent inmates. The department may recoup those costs from funds that later become available to the particular inmate. K.A.R. 44-12-601(f)(3) (2017 Supp.).

At the outset, we take a couple of procedural matters off the table. Hernandez has standing to challenge the regulations insofar as they have been applied to him. Prison officials have seized materials mailed to him as being sexually explicit in violation of K.A.R. 44-12-313. After requesting administrative reviews of those seizures, Hernandez had to pay the postage to have the materials sent from the prison to Topeka. Nobody disputes that Hernandez has exhausted the available administrative remedies, clearing the

3

way for him to seek relief under K.S.A. 60-1501. Venue in Leavenworth County was not contested as to the seizures occurring elsewhere and is immaterial now.

For his first point on appeal, Hernandez contends the requirement that inmates pay the postage for sending confiscated materials from the prison to the Department offices in Topeka for administrative review amounts to "an institutional fine and punishment" for exercising constitutionally protected due process rights. We disagree. The amount of money is comparatively small, as Hernandez concedes. From the district court orders, we gather the total amount of postage for all five cases was less than $15. We recognize that inmates typically earn nominal wages at prison jobs. But the postage costs are not so onerous they create a constitutional deprivation by unduly burdening or effectively precluding administrative review.

The Kansas Supreme Court recently recognized that a reasonable fee imposed for administrative review of an adverse determination affecting a protected property right or interest does not offend constitutional due process protections. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 464, 447 P.3d 959 (2019). A significant component of an acceptable fee structure is a bypass permitting indigent persons to access the review process without having to come up with the payment. 310 Kan. at 464-65 (finding $50 fee for administrative review of driver's license suspension constitutionally infirm without provision waiving or deferring payment based on indigence). Although the postage costs may not be identical to an administrative filing fee, they are sufficiently similar that the due process considerations recognized in *Creecy* apply and permit their assessment to an inmate challenging the confiscation of materials as sexually explicit in violation of K.A.R. 44-12-313. We think that's particularly true given the comparatively small amount of money involved coupled with a bypass permitting indigent inmates access to administrative review without having to pay in advance.

4

Hernandez raises two collateral arguments that are unavailing in this context. First, he says the Department could use some other means of transmitting the challenged materials that entails no cost to the inmates, such as scanning and e-mailing the documents or using an intraagency delivery system. Electronic transmission presumably would be an option; a departmental delivery system is not so obvious a method. But the Department of Corrections has the right to choose among reasonable alternatives, and requiring an inmate to pay postage for getting the challenged materials from a prison to the agency's headquarters in Topeka is permissible. Second, Hernandez says he was not allowed to view the confiscated materials before initiating his administrative challenge and paying the postage to have those materials mailed to Topeka. So he contends he could not make a reasoned determination about whether to incur those costs. On the narrow issue Hernandez has framed, we do not find his inability to examine the materials turned the requirement he pay the postage into a due process violation.

For his second point on appeal, Hernandez contends K.A.R. 44-12-313 is constitutionally overbroad because it defines sexually explicit materials to include any visual depiction of the unclothed human buttock. And he says in many circumstances a picture of a bare butt would not be sexually explicit. Although the factual premise may be correct, that fact alone is legally insufficient to render the regulation constitutionally overbroad and, thus, unenforceable. A statute or regulation is constitutionally overbroad if it contains a prohibition that extends to a substantial amount of speech or conduct protected under the First Amendment. See *Grayned v. City of Rockford*, 408 U.S. 104, 114-15, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *State v. Boettger*, 310 Kan. ___, 450 P.3d 805, 808 (2019).

Hernandez' argument falters for two reasons. First, the regulation does not define something as sexually explicit simply because it contains a photograph or drawing of an unclothed buttock. The material also must have "the purpose" of sexual arousal or gratification. And that purpose appears to depend upon the intent of the author or

publisher. So, presumably, an article in a recognized medical journal illustrated with a photograph of naked buttocks would not be treated as contraband under K.A.R. 44-12-313.

Second, this regulation applies to inmates being held in the Kansas prison system, meaning they are convicted felons serving terms of incarceration as part of their punishment. Although convicted felons retain certain core constitutional protections while in prison, their rights, including those enumerated in the First Amendment, may be curtailed to accommodate the legitimate objectives of prison administration, including managing an inmate population in ways that promote both security and rehabilitation. *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). In *Turner*, the Court identified several factors to be considered in assessing regulations or practices restricting inmates' constitutional rights: (1) a rational connection between the regulation and a legitimate governmental interest; (2) an alternative means of exercising the constitutional right; (3) the comparative effect of the regulation and the proposed alternative on guards, other inmates, and "the allocation of prison resources generally"; and (4) "ready alternatives" to the restrictive regulation. 482 U.S. at 89-91. As a general matter, the courts defer to prison administrators in fashioning regulations balancing inmate rights with legitimate penological goals and institutional needs and will step in only if a regulation lacks a reasonable relationship to identified goals and needs. 482 U.S. at 89; *Washington v. Werholtz*, 40 Kan. App. 2d 860, 864, 197 P.3d 843 (2008).

This court considered K.A.R. 44-12-313 in *Washington* and found the prohibition on possession of sexually explicit materials to be constitutionally permissible, consistent with the criteria outlined in *Turner*. The United States Court of Appeals for the Tenth Circuit reviewed a constitutional challenge to K.A.R. 44-12-313 and came to the same conclusion. *Sperry v. Werholtz*, 413 Fed. Appx. 31, 33 (10th Cir. 2011) (unpublished opinion).

6

Given the governing legal principles, including the deference accorded prison officials, we cannot say that Hernandez has shown K.A.R. 44-12-313 to be unconstitutionally overbroad because the regulation prohibits inmates from possessing materials that have the purpose of fostering sexual arousal or gratification and contain visual depictions of unclothed buttocks.

For his final point on appeal, Hernandez contends the Department of Corrections could and should implement a policy that offending sexually explicit content be excised from any mailed materials and the expurgated remainder be given to the inmate. As an example, Hernandez cites the notification he received that an issue of Esquire had been confiscated as sexually explicit. The notice identifies three pages of the magazine that contain photographs the reviewing officer believed violated K.A.R. 44-12-313. One of them appeared on page 122, so the magazine had at least that many pages. And, in turn, 119 of those pages apparently contained nothing the reviewer found to be sexually explicit under the regulation. Hernandez suggests the Department of Corrections ought to have removed the offending pages and forward the rest of the magazine to him.

The Department could have adopted a regulation like that, but it has no constitutional obligation to do so. Hernandez' argument really turns on an application of the third and fourth factors identified in *Turner*—the availability of an alternative policy that preserves both the functionality and objectives of the challenged regulation but permits a greater measure of constitutional freedom to the inmates. As outlined in *Turner*, an inmate bears the burden of identifying a substitute policy and establishing it to be an "easy" alternative with only "*de minimis* cost to valid penological interests" including the efficient use of prison personnel. 482 U.S. at 90-91. Hernandez did not assert this argument in the district court and developed no evidence to support his suggestion as an acceptable alternative within the relatively narrow confines of *Turner*.

We have no idea about the volume of incoming mail that would have to be thoroughly reviewed and then edited page by page to remove the offending content. We similarly have no information about how reviewers now handle much of the material. Other notifications to Hernandez that are included in the record on appeal indicate simply that the particular publication violates K.A.R. 44-12-313 without identifying specific pages or reasons. In those instances, the reviewer may have found one prohibited image in the mailed material, stopped looking, and moved on to the next item. Hernandez' proposal would substantially increase the workload if that were the case. Likewise, removing multiple photographs or other images from lengthy publications could be quite time consuming. Under *Turner*, Hernandez has to show his proposal would be about as effective and efficient in advancing the Department's legitimate objectives. He cannot carry that burden on this record.

Having carefully examined each of the issues Hernandez has raised on appeal, we conclude he has demonstrated no reversible error in the district court's rulings in these consolidated cases.

Affirmed.