[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14099

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JASON M. MORIARTY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:04-cr-00005-CEM-GJK-1

_____

Before ROSENBAUM, JILL PRYOR, and TJOFLAT, Circuit Judges.

PER CURIAM:

Jason Moriarty appeals his 72-month total sentence, consisting of three consecutive statutory-maximum 24-month sentences, upon the revocation of his supervised release as to three original counts of conviction. On appeal, he argues that the District Court imposed a procedurally unreasonable sentence by relying on an allegedly clearly erroneous fact when imposing his sentence, namely, that he was actively in sex-offender treatment at the time he violated his supervised release. He also argues that his sentence was substantively unreasonable because the District Court exceeded the guideline range and stacked three consecutive, statutory-maximum terms of imprisonment. Finding Moriarty's sentence to be both procedurally and substantively reasonable, we affirm.

## I.

In 2004, a federal grand jury in the Middle District of Florida indicted Jason Moriarty on one count of attempting to receive, and receiving and possessing with intent to sell, material containing images of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (a)(4)(B), and (b)(1); one count of attempting to possess and possessing material containing images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and one count of receiving and possessing with intent to distribute an obscene visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 1466A(a)(1) and (2).

Moriarty pleaded guilty to all three counts. The District Court sentenced him to 240 months' imprisonment, followed by a lifetime term of supervised release, which included the standard conditions of supervision. Moriarty appealed his sentence, arguing that the District Court erred by imposing a general sentence of 20 years when the statutory maximum for Count Two was ten years. We agreed, and we vacated Moriarty's initial sentence and remanded the case for resentencing. *United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005) (per curiam). On resentencing, the District Court imposed a sentence of 240 months' imprisonment as to Count One, and 120 months each for Counts Two and Three, to run concurrently to Count One. This term of imprisonment was followed by a lifetime term of supervised release as to Count One, a five-year term of supervised release for Count Two, and a three-year term of supervised release for Count Three. The standard conditions of supervision applied.

Moriarty was released, and his period of supervision commenced, on July 1, 2021. On July 6, Moriarty agreed to modify the terms of his supervised release. The new terms (1) required that Moriarty participate in a mental health program specializing in sexual-offender treatment; (2) required Moriarty to submit to polygraph testing for treatment and monitoring purposes; and (3) prohibited Moriarty from "possessing, subscribing to, or viewing, any video, magazines, or literature depicting children in the nude and/or in sexually explicit positions"; and (4) prohibited Moriarty from either "possessing or using a computer (including a smart phone, a hand-held computer device, a gaming console, or an

electronic device) capable of connecting to an online service or an internet service provider," without prior written approval of his probation officer.  The last requirement included accessing a computer "at a public library, an internet cafe, [Moriarty's] place of employment, or an educational facility."

On August 19, Probation Officer Matthew Zorn filed a memorandum with the District Court, alleging that Moriarty violated the terms of his supervised release.  On August 14, Deputy Diaz of the Orange County Sheriff's Office contacted Zorn and stated that she made contact with Moriarty at a public library in Orlando, Florida.  On August 13, a staff member at the library noticed Moriarty viewing sexually explicit images of minors on a public computer.  The staff member recognized Moriarty when he returned on August 14 and promptly contacted the authorities.  Moriarty told Deputy Diaz that he was looking into adults wearing baby clothes and wearing diapers and was taking photos of those images with his cell phone to masturbate at home.  Moriarty contacted Zorn on August 14 as well and informed Zorn that he had been in contact with law enforcement at the library;  he admitted to using a computer to look up photos of adults wearing diapers. He further admitted that some photos of children appeared as well, but his intention was to look up photos of adults.  Finally, Moriarty admitted to Zorn that he knew he was not permitted to access the internet through the library computers.

On August 16, Zorn spoke with the library employee.  She confirmed that she had seen Moriarty's screen on August 13, and

she believed she saw a video depicting a minor female touching herself in a sexual way. She observed images of bondage and minor children who were duct taped. She also said that Moriarty was taking photos of the computer screen with his phone. After speaking with the library employee, Officer Zorn and Probation Officer Curran met Moriarty. He admitted to using the internet on the library computer on August 13 and stated that he entered search terms such as "diaper punishment," "diaper bondage," and "diaper kidnapping," and that he took photos using his cell phone, though he deleted the photos. Moriarty also admitted to accessing the internet from the public library again on August 14 to create an email address. Officers Zorn and Curran confiscated Moriarty's phone for further review. Officer Zorn's memo informed the Court that it may revoke Moriarty's supervised release and impose a term of imprisonment up to two years for each count of conviction, and that these statutory maximums could be imposed concurrently or consecutively under 18 U.S.C. §§ 3583(e) and 3584(a). Officer Zorn petitioned the Court to issue a warrant for Moriarty because he violated the terms of his supervised release. The Court issued the warrant as requested.

The probation officer filed a recommendation with the District Court. After recounting the details of the violation, the report noted that a preliminary review of Moriarty's phone revealed over 400 images of possible child erotica—with many of the images involving minors in bondage or kidnapping scenarios. The recommendation also stated that the conduct in Moriarty's presentence investigation report for his original arrest reflected that he kept

handwritten narratives outlining sexual assaults of and bondage activities involving minors. Moriarty's landlord also notified the probation office that, while cleaning out Moriarty's room for another resident to move in, she found books titled *Design Ideas for Baby Rooms* and *Backyards for Kids*. Another resident notified the probation office that when the new renter moved into Moriarty's room, he found a pair of boy's underwear within the bedding on the bed. The probation office recommended two years' imprisonment followed by a lifetime term of supervised release with all the same special conditions.

At Moriarty's revocation hearing, the District Court found that Moriarty had violated one condition of his supervised release and adjudicated him guilty of one grade C violation. The Court further found that the guideline range was four to ten months, with a statutory maximum of two years' imprisonment, and a maximum of a lifetime term of supervised release. The government clarified that the maximum sentence was two years per count, and that Moriarty was originally sentenced on three counts. The government offered 12 photographs into evidence. These photographs included images of children tied up, children in bondage restraints, children tied to a bed, children wearing diapers, and various other images of children.

Moriarty spoke on his own behalf. He said:

I'm sorry. I got curious about the Internet. I haven't seen a computer in 18 years. . . . I got scared and I went back to my old way of thinking. I had treatment

21-14099               Opinion of the Court                7

> in prison, but I lost that support when I got released,
> and I was lost.

Revocation Hr'g Tr., Doc. 148, at 9.  He claimed that he was sorry about the images, and that he had second thoughts almost immediately and deleted them and he noted that he was about to start with a treatment group, but got arrested before he could start.

Moriarty's attorney objected to a sentence of six years, which he anticipated the government was going to ask for.  According to the attorney, the original sentence was imposed concurrently, the terms of supervised release were imposed concurrently, and the violation was a single violation.  He asked the Court to consider something far less than even the guideline range, and let Moriarty try again with treatment, guidance, and supervision.  And if Moriarty stumbles a second time, then impose a sentence like the government was requesting.

The government requested that Moriarty be sentenced to 24 months per count, to be run consecutively, followed by a lifetime of supervised release.  The government noted that the type of sentence they were recommending for Moriarty was not something that should be done in every case.

The government reiterated that just over one month after Moriarty was released, he was caught taking photos of individuals wearing baby clothes and diapers, and that he admitted that he took those photos to masturbate at home.  The government believed Moriarty to be a danger to society for several reasons.  First, because after being incarcerated for almost 20 years and after

receiving sex-offender treatment in prison, Moriarty violated his supervision after just one month.  The government stated that the 12 photos it had entered into evidence were representative of the approximately 500 images of child erotica found on Moriarty's phone—images that were created between July 10, 2021 and August 13, 2021.  Particularly alarming to the government was that one of the photos on the phone was of a live child—not a photo of a child from the internet—standing in the checkout line of a store.

The government also described the relevant facts of Moriarty's underlying case—facts which, according to the government, made Moriarty's actions here even more concerning.  In that case, a search of Moriarty's bedroom uncovered a book titled *Hollywood Kids*, and inside the book were 50 to 100 printed and photographic images of children, including some of a sadistic nature and some of children in diapers.  At Moriarty's original sentencing hearing, his neighbors testified that their six-year-old son woke up crying and not wearing the diaper they had put him in before bed.  The mother believed Moriarty had come into their house and taken the diaper—the child's window had been left open and photos of the child had been found in Moriarty's home.  The government was concerned that (1) Moriarty's past conduct, (2) his own statements that he went back to his old ways of thinking, (3) the fact that he went to the library on two consecutive days just one month after being released, and (4) the number of images he possessed that were created between July 10 and August 13 all showed that he was not able to follow the conditions of his release.

The government asserted that it was recommending a sentence of two years on each count, to be served consecutively. Moriarty's attorney again requested that the Court "[g]ive him the high end of the guideline sentence, get him back on supervision, get him into treatment, and if he does it again, Your Honor, then lower that kind of boom." *Id.* at 19.

The Court then began to impose its sentence. The Court was concerned that Moriarty violated his supervised release so quickly. Addressing Moriarty, the Court said:

> [T]he only rational explanation for why someone in your situation on the heels of a 17-year prison sentence would be willing to risk [returning to prison]— I mean, you indicated that you were grateful to your probation officer because he helped you find a place to stay and got you back on your feet. You were getting treatment. So why would you do what you did? You did it because you can't control it.

*Id.* at 20. The Court believed Moriarty was dangerous because, looking at the evidence, it looked like Moriarty was "either planning on kidnapping a child or [was] aroused at the thought of a child being kidnapped." *Id.* at 21. While the Court believed that Moriarty should get some benefit for accepting responsibility, it also noted that this was not a particularly difficult violation to prove.

The Court again mentioned that Moriarty could not control his urges, and that he admitted to his probation officer that he

collected this material for sexual stimulation, which was alarming. While the Court believed that the type of sentence the government requested should be used sparingly and only for the most dangerous people, it said that Moriarty was that type of person. According to the Court:

> [T]his is almost an episode of Law and Order . . . . That's how bad this is. Everything is in line here. The photos of the kids bound and gagged, his admission that this turns him on. Less than 60 days after getting released from a 17-year prison sentence he's in a public library downloading this stuff and taking photos of it with his phone. Every single thing is here. If this were a movie script, someone would say "This doesn't happen in real life," but it did.

*Id.* at 22.

While the Court believed Moriarty should get some kind of benefit for accepting responsibility, the judge said "I couldn't live with myself if the next time you're in here there are parents on the front row of that pew talking about what happened to their child because someone made the wrong decision." *Id.* at 23. According to the Court, Moriarty had made clear what his obsessions were and he was not going to stop. The Court noted that Moriarty's probation officer should be commended for going above and beyond to try to help him, and that he was "getting the treatment [he] needed to get." *Id.* at 23.

Ultimately the Court determined that Moriarty was "a dangerous person engaged in dangerous activity," as he had "this treasure trove of photos of children bound and gagged as if you're either going to plan to kidnap one or you are just sexually aroused by the thought of a child being kidnapped, which could turn into something much worse." *Id*. at 23–24. The Court revoked Moriarty's supervised release and sentenced him to two years' imprisonment for each count, to run consecutively to one another, followed by a lifetime term of supervised release. In reaching this sentence, the Court considered the factors set forth in 18 U.S.C. § 3553(a) and the advisory guidelines and policy statements issued by the United States Sentencing Commission. When asked if either side had objections, Moriarty's attorney said "Yes, Your Honor. I object to procedural and substantive reasonableness," in addition to the objections he had previously stated.

## II.

We review the reasonableness of a sentence, including the imposition of supervised release, under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007); *see United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003) (stating that supervised-release sentences are reviewed for abuse of discretion). "With respect to Sentencing Guidelines issues, this Court reviews purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with due deference." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (internal quotation marks omitted).

When reviewing for reasonableness, we must first ensure that the district court committed no significant procedural error, such as failing to calculate the guideline range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting the sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence, including any deviation from the guideline range. *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985). Even if the district court erred, "we are not required to vacate the sentence and remand the case if the court would have likely sentenced [the defendant] in the same way without the error." *United States v. Scott*, 441 F.3d 1322, 1329 (11th Cir. 2006).

Here, the District Court did not impose a procedurally unreasonable sentence by allegedly relying on a clearly erroneous fact because, in the full context of the sentencing hearing, the District Court was not under the misapprehension that Moriarty was actively in sex-offender treatment when he violated his terms of supervised release.[1] The Court made two statements during the

---

[1] The government argues that plain error, and not abuse of discretion, is the appropriate standard of review because Moriarty's objection to "procedural and substantive reasonableness" at the sentencing hearing was not sufficient to preserve that objection for appeal. Because Moriarty's sentence is

sentencing hearing that referenced Moriarty's treatment. While one way to interpret the Court's comments is that it believed Moriarty was actively receiving sex-offender treatment at the time he violated the terms of his supervised release, another way of interpreting those statements is that the Court knew Moriarty was about to start sex-offender treatment.

The record shows Moriarty agreed to modify the terms of his supervised release to include sex-offender treatment only a month before he violated his supervision. At the sentencing hearing Moriarty, his attorney, and the government all made statements to the effect that Moriarty lost his treatment when he left prison and was about to start treatment again. Moriarty explicitly said "I was about to start with the ITM treatment group, but got arrested before I could start." In light of the entire record, the District Court's comments are best read as a statement that Moriarty's probation officer had gotten him into treatment and Moriarty was about to receive it. We are not left with a definite conviction that an error has been committed.

But even if the Court was under the mistaken impression that Moriarty was receiving treatment at the time of his arrest, the Court would likely have sentenced Moriarty in the same way without the error. *See id.* Based on the Court's comments, it was appalled by the more than 400 photos on Moriarty's phone, the

procedurally reasonable even under the less rigorous abuse of discretion standard, we do not reach this argument.

content of those photos, and the quickness with which he violated the terms of his supervision.  The Court's concern that Moriarty was a danger to society drove its decision.

The District Court did not abuse its discretion and Moriarty's sentence is procedurally reasonable.

## III.

Because the District Court imposed a procedurally reasonable sentence, we next examine substantive reasonableness.  Moriarty essentially makes two arguments regarding substantive reasonableness.  At bottom, his first argument is that his sentence is substantively unreasonable because it is longer than necessary to achieve the purposes of sentencing.  His second argument is that, regardless of whether the Court's variance was warranted, his sentence was substantively unreasonable because the Court lacked authority to impose consecutive sentences.

### A.

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard, considering the totality of the circumstances.  *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. Under the abuse-of-discretion standard, we will only vacate the defendant's sentence if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc).  The Supreme Court has stated that a defendant is not required to raise a specific objection that the sentence is

unreasonable, which is the standard of review for appeal, but need only bring to the district court's attention his view that a longer sentence is greater than necessary to achieve the purposes of sentencing to preserve a claim that the longer sentence is unreasonable. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020).

We look to whether a sentence is substantively reasonable considering the totality of the circumstances and the § 3553(a) factors. *Irey*, 612 F.3d at 1189. A court imposes a substantively unreasonable sentence only when it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (citation omitted). Further, a district court must evaluate all the § 3553(a) factors, but the weight accorded to each factor is within the sound discretion of the district court. *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1272-73 (11th Cir. 2014). An appeals court may not apply a heightened standard of review to sentences outside the guideline range. *Peugh v. United States,* 569 U.S. 530, 536–37, 133 S. Ct. 2072, 2080 (2013).

The Sentencing Guidelines provide that a sentence imposed upon revocation of supervised release should sanction primarily the defendant's "breach of trust" for failing to abide by the conditions of the court ordered supervision, while also accounting for, "to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. Ch. 7, Pt. A, intro. cmt. (3(b)). The Guidelines explain that the Sentencing

Commission chose not to sanction violators for the conduct of the revocation as if that conduct was being sentenced as new federal criminal conduct because "the court with jurisdiction over the criminal conduct leading to revocation is the more appropriate body to impose punishment for that new criminal conduct," and "as a breach of trust inherent in the conditions of supervision, the sanction for the violation of trust should be in addition, or consecutive, to any sentence imposed for the new conduct." *Id.* We have "consistently held that the policy statements of Chapter 7 are merely advisory and not binding." *United States v. Silva*, 443 F.3d 795, 799 (11th Cir. 2006).

A district court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release. 18 U.S.C. § 3583(e)(3). The relevant § 3553(a) factors that a district court must consider in determining whether to impose an imprisonment term upon revocation of supervised release include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; the kinds of sentences available; any pertinent policy statements; and the need to avoid unwarranted sentencing disparities. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7), 3583(e)(3).

In determining whether to impose a variance, a district court may consider the nature of a prior offense under the § 3553(a) factors, because it "fits squarely into . . . the history and characteristics of the offender" under § 3553(a)(1). *United States v. Williams*, 526

F.3d 1312, 1324 (11th Cir. 2008).  The district court has broad discretion to decide whether the § 3553(a) factors justify a variance. *Gall*, 552 U.S. at 51, 128 S. Ct. at 597.  The sentencing court may impose an upward variance based on a defendant's uncharged criminal conduct, the defendant's history and characteristics, and the need to promote respect for the law, afford adequate deterrence, and protect the public.  *United States v. Overstreet*, 713 F.3d 627, 637-38 (11th Cir. 2013).

Here, the District Court's sentence was not substantively unreasonable.  Moriarty's argument that the Court failed to consider the Chapter 7 sentencing statement is without merit, because the Court explicitly stated that it did.  With respect to sentencing disparities, the Court acknowledged that imposing three consecutive statutory maximum sentences was strong medicine that should be used sparingly.  But given the quickness with which Moriarty violated the terms of his supervision, the number of photos found on Moriarty's phone, the content of those photos, and the similarity to Moriarty's underlying convictions, the Court believed such a sentence was appropriate here.  Further, the Court acknowledged Moriarty's acceptance of responsibility and weighed it along with the other factors it considered.  The Court discussed all those factors in both explaining why it varied upward from the guideline range and why it ordered the statutory maximum sentences to be served consecutively.  The Court considered all relevant factors and did not abuse its discretion in balancing them.

*B.*

Moriarty also argues that the Court lacked the discretion to impose consecutive sentences. If multiple terms of imprisonment are imposed on a defendant at the same time, the terms may run concurrently or consecutively. 18 U.S.C. § 3584(a). "Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively." *Id.* A court must consider the § 3553(a) factors, as to each offense for which a term of imprisonment is being imposed, in determining whether to order a sentence to run concurrently or consecutively. 18 U.S.C. § 3584(b); *United States v. Ballard*, 6 F.3d 1502, 1505 (11th Cir. 1993).

In *United States v. Quinones*, a defendant was serving concurrent terms of supervised release for two different convictions in two separate district courts. 136 F.3d 1293, 1294 (11th Cir. 1998). He violated the conditions of his supervised release, and his two separate cases were consolidated for a single revocation hearing. *Id.* The district court revoked his terms of supervised release and sentenced him to 18 months' imprisonment for each violation, to be served consecutively. *Id.* Quinones appealed, arguing that the district court lacked the discretion to sentence him to consecutive terms of imprisonment following the revocation of his concurrent terms of supervised release. *Id.* at 1295. We held that whether the terms of imprisonment for each violation were to be consecutive or concurrent was a question that § 3584(a) entrusts to the court's discretion. *Id.* We then noted that the Sentencing Guidelines's policy statements that address revocation say nothing about

concurrence or consecutiveness, leaving intact the district court's statutory discretion. *Id.*

Moriarty argues that *Quinones* does not apply because his terms of supervised release were not imposed by two different jurisdictions in two separate cases—he has one case with supervised release imposed by the same court simultaneously for multiple counts of the same indictment. But our holding in *Quinones* was not limited to such a scenario. We said: "Quinones had two such terms [of supervised release], and the district court could therefore revoke both and sentence Quinones to a term of imprisonment for each violation. Whether these terms were to be consecutive or concurrent was a question that § 3584(a) entrusts to the court's discretion." *Id.* Here, Moriarty had three terms of supervised release. The District Court had the discretion to revoke and sentence him on all three.

Moriarty further argues that the Supreme Court undermined *Quinones* in *Johnson v. United States*, 529 U.S. 694, 120 S. Ct. 1795 (2000). But *Johnson* did not address the same type of situation. *Johnson* concerned a circuit split about whether § 3583(h) applied retroactively to cases in which the initial offense conduct occurred before the date of its enactment. The Supreme Court determined that it did not apply retroactively, and that Johnson's case did not present any *ex post facto* issue. *Id.* at 701–02, 120 S. Ct. at 1802. Thus, Johnson's case turned on whether § 3583(e)(3) permitted the imposition of supervised release following a recommitment. *Id.* at 702–03, 120 S. Ct. at 1802. The Court went on to hold, as a

textual matter, that § 3583(e)(3) left open the possibility of supervised release after reincarceration, such that even before § 3583(h), courts could properly impose supervised release following reincarceration. *Id.* at 713, 120 S. Ct. at 1807.  Nothing in the Court's discussion addressed § 3584 or whether a district court may impose new terms of imprisonment consecutively.

Under our prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).  *Johnson* did not undermine *Quinones* to the point of abrogation.  And even if it had, post-*Johnson* we have cited *Quinones* to hold that a district court acts within its discretion when imposing a consecutive sentence upon revocation of two terms of concurrent supervised release.  *United States v. Sweeting*, 437 F.3d 1105, 1106–07 (11th Cir. 2006).

⋆    ⋆    ⋆

Here, the District Court did not impose a substantively unreasonable sentence in sentencing Moriarty to three consecutive statutory-maximum terms of imprisonment because he violated a condition that applied to all three of his terms of supervised release, the Court had discretion to do so under law, and the Court appropriately weighed the § 3553(a) factors.

**AFFIRMED.**